GEORGE H. SACKETT, Appellant, v. CHICAGO GREAT WESTERN RAILROAD COMPANY et al., Appellees.

RAILROADS: Accidents at Crossings—Contributory Negligence of Guest. A guest may not wholly abandon himself to the care of the driver of a vehicle in which he is riding. *Held* that a guest who permits the driver to run into the side of a moving

train, without attempt on the part of the guest to maintain
any lookout, is guilty of contributory negligence *per se.*

*Appeal from Polk District Court.*—Hubert Utterback,
Judge.

November 22, 1919.

Action against defendant and the conductor and en-
gineer in charge of the train, for damages resulting from
personal injuries in a collision between the train and a
motorcycle on which plaintiff was riding.  The accident oc-
curred at a crossing in the city of Des Moines.  From a
directed verdict in favor of the defendants, the plaintiff ap-
peals.—*Affirmed.*

*Fred F. Keithley,* for appellant.

*Carr, Carr & Cox,* for appellees.

Preston, J.—The negligence alleged was that defend-
ants were running the train at an unlawful and excessive
speed; that defendants failed to ring the bell or blow the
whistle; that they failed to provide a flagman, gates, or
any device to warn persons of the approach of a train.  The
motion to direct a verdict was on the ground that the evi-
dence shows, without dispute, that plaintiff was guilty of
contributory negligence, as a matter of law.  Appellant has
argued at some length the question as to the negligence of
the defendants.  It may be conceded that, on this point,
the evidence was sufficient to take the case to the jury.  The
motion for a directed verdict was sustained, on the ground
that plaintiff was guilty of contributory negligence, and
this seems to be the only question in the case.  It appears
that plaintiff, a boy 16 years old, was riding on the rear
seat of a motorcycle, as the guest of Sillick, who was 24
years old.  Sillick, the owner, was operating the machine
from the front seat.  They had come into Des Moines from

the country east of the city. The roads were rough. Plaintiff says he was tired, and had a headache, caused by the rough roads. They turned west on Grand Avenue at East Twenty-ninth Street. Plaintiff was seated sideways, with his face to the north. His back was towards the train, as it approached from the south. He says it was easier to sit sideways, the way he was feeling; that he could ease himself from the bumps better. The tracks of defendant railway intersect Grand Avenue on Twentieth Street. In approaching the city from the east, the first track is that of defendant railway, the second, the Rock Island, and the third, the interurban, the Great Western track being 57 feet from the Rock Island track, and the Rock Island track, 27 feet from the interurban. The paved portion of Grand Avenue is 36 feet wide. There were obstructions to the south, a billboard and buildings. At a point approximately 48 feet east of the center of the Great Western track, in the center of Grand Avenue, one could see the track to the south 208 feet. Plaintiff and the driver were both familiar with the conditions at the crossing, and knew they were approaching railroad tracks, and knew that trains might be crossing the street at any time. Plaintiff says he was listening, but heard no bell or whistle or anything that sounded like a train. The motorcycle was traveling at a speed of 17 or 18 miles an hour. At some distance from the tracks, plaintiff requested the driver to slow down, because, as he says, "It was a crossing, and I knew it was bumpy, but I don't know whether I thought of the train or not." Plaintiff made no further request as to speed. As they approached the track, he looked to the north, and saw there was no train approaching from that direction. He did not at any time look to the south. He says further:

"I remember when Fred [Sillick] swerved first, he made a sudden turn, and I knew something was wrong, but

I am not sure whether I looked or not, but I think I just started to look, and the crash came."

He did not at any time look to the south, and did not see the train at any time before the collision. When the engine came into the street, the motorcycle was about 60 feet from the point of the collision. The driver of the motorcycle did not see the train until the engine was on the paved portion of the street or crossing. The motorcycle struck the baggage car, the first car back of the engine. There is evidence that the train was going about 30 miles an hour. Appellant argues that the train would travel the distance of 208 feet in a fraction over 4 seconds, and the motorcycle, going 16 miles an hour, would travel the 48 feet in a fraction over 2 seconds. If the estimates as to the speed of both the train and motorcycle were exact, this would have given plaintiff a margin of 2 seconds to get across. A very close margin, at the best, and the chances would be hazardous.

We shall set out a little more fully the testimony of Sillick, the driver.

"I don't know how fast I was going when I first saw the train; I had slowed down,—I couldn't say,—probably 3 or 4 miles an hour. I was probably traveling 13 or 14 miles an hour, at the time I first saw the train. The engine was then occupying a portion of the street. I didn't hit the engine; the engine had gotten by me before I struck. I can't put any estimate on the distance I was from the track when I first saw the engine. I put the brake on practically as soon as I saw the train. The brake took hold immediately on putting it on. I did not turn at the same time,—turned gradually,—you can't turn very short. I don't remember whether I turned at the same time I put the brake on. I don't know how far I had gone before the machine began to skid. I do not know whether that was after I applied the brake. I don't know how far it did skid

before it fell. It fell on the ground. I was still on the motorcycle when it hit the train. I didn't see anything on the track, except just right in front of me, right on the street. I glanced to the north, and saw everything clear, and knew there was not a train coming from that direction. Q. Did you immediately turn and look to the south again? A. I think so; I don't remember. Q. At any time between those two looks? A. I don't remember. Q. You do know this: that you didn't look to the south; when you saw the train, you was so close you could not stop, at the speed you were traveling. That is true? A. Yes, sir, the train was there. Q. Until you looked at that time when you tried to stop, you had not looked to the south from the point where you had a view of more than 5 or 6 feet of the track south of Grand Avenue. That is right, is it not? A. I think so. Q. You know the first time you did look to the south that you could not see the track south of Grand Avenue, didn't you? A. Yes, sir; I knew there was a railroad there; I could see the track, and was looking for trains on it."

Another of plaintiff's witnesses testifies that the billboards would not interfere with the view of a person coming from the east after he got within 42 feet of the track,— after he got past the west corner of the billboard; that the shanty is about 93 feet south of the south line of Grand Avenue, and about 136 feet south of the center of Grand Avenue; that, according to his calculations, a person within 42 feet of the track would have a view of the track greater than 136 feet from the center of Grand Avenue, unobstructed by anything. Other witnesses testified for plaintiff as to the conditions, the distances, the distance east of the track, and location of the motorcycle at the time the engine came onto the crossing, the distance it could be seen, etc. Some of this evidence is not as favorable to the plaintiff as the evidence we have set out. We are giving to plain-

tiff the most favorable construction of the evidence which it will bear. Defendant introduced no evidence. Many cases are cited by plaintiff on the question of the negligence of the defendant, and the rate of speed of the train, failure to sound an alarm, the duty of plaintiff in approaching, etc. Appellee cites *Beemer v. Chicago, R. I. & P. R. Co.*, 181 Iowa 642, and several cases from other jurisdictions, to the same point. We think the instant case is ruled by the *Beemer* case. The bare reading of the evidence shows that Sillick, the driver, was guilty of contributory negligence. He either approached the crossing at the speed indicated without looking, or without seeing what could have been seen, or else was traveling at such a rate of speed as that he could not stop after he saw, or should have seen, the train. In short, he recklessly, and apparently without any care, ran his motorcycle against the train. There is no room for a difference of opinion as to that. Conceding that the driver's negligence may not be imputed to plaintiff, still, under the circumstances, plaintiff was as much under the duty of lookout and discovery as was the driver. Under the record, plaintiff did nothing, and exercised no care for his own safety. It is not claimed that he did anything, except that, at some point east of the track, and some distance east of it, he suggested to Sillick that he slow down. But this was because it was bumpy. Sillick did slow down some, but they were still going about 15 miles an hour. Plaintiff made no further suggestion to Sillick. We think that, under the undisputed evidence, plaintiff was guilty of contributory negligence, and that the trial court rightly directed a verdict.

Errors are assigned in regard to rulings of the trial court, on objections to evidence, and in excluding offered evidence by plaintiff. These relate more to the question of defendant's negligence; and, had the rulings been otherwise,

the ultimate question of plaintiff's contributory negligence would not be affected.—*Affirmed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.