HARRY REYNOLDS, Appellant, v. WALKER D. HINES, Director General of Railroads, Appellee.

**RAILROADS:** Accidents at Crossing—Negligence Per Se of Minor. A boy 15 years of age, and of average mentality, who, on a clear day and without distracting circumstances, and at a time when he is expecting a train, drives upon a familiar railroad crossing with an easily managed team, and at all times after reaching a point 25 feet from the track has an unobstructed view of an on-coming train for a distance of from 237 to 400 feet, is guilty of contributory negligence *per se*, even though he says he looked and listened up to the instant of collision.

*Appeal from Mahaska District Court.*—H. F. WAGNER, Judge.

NOVEMBER 16, 1921.

ACTION for damages resulting from a collision with a railway passenger train. Directed verdict for defendant, and plaintiff appeals.—*Affirmed.*

*McCoy & McCoy* and *Theo. R. Wilkie*, for appellant.

*Burrell & Devitt*, for appellee.

STEVENS, J.—This is an action by Harry Reynolds, a minor 15 years of age, by his next friend, against the director general of railroads, for personal injuries received in the collision of a milk wagon, which he was driving south on Seventh Street in the city of Oskaloosa, with an east-bound passenger train on the tracks of the Minneapolis & St. Louis Railway Company. The tracks of the Minneapolis & St. Louis Railway run approximately east and west in the vicinity of the accident, and across Seventh Street at right angles. Seventh Street extends north and south, and is also crossed by the tracks of the Chicago, Burlington & Quincy Railway Company, 91 feet north of the Minneapolis & St. Louis Railway crossing. There is a building 25 feet north of the center of the Minneapolis & St. Louis Railway tracks, and 237 feet west of the center of Seventh Street, which is referred to in the evidence as the Caldwell Silo Company's plant. The main building extends 40 feet north and south and 102 feet east and west. Immediately south of the main building and attached thereto is a shed, which extends east and west practically the whole length of the main building, and is 20 feet wide. The height of the main building to the eaves is 24 feet, and of the shed, 14 feet. The main building has a gable roof, and the addition, a shed roof. The distance from the center of the main track of the Minneapolis & St. Louis Railway to the south side of the shed addition is 25 feet. There is a spur track between the main track and the silo building, which interlocks with the main track a short distance west of the west side of Seventh Street. There was a box car standing on the spur track at the time of the accident. There is a dispute in the evidence as to whether it stood west of the silo building or

immediately east of the southeast corner of the shed, which is not quite flush with the east side of the main building.

Harry Reynolds testified that the accident occurred about noon, June 17, 1918, and that the day was clear, warm, and dusty. He was driving a span of ponies, hitched to a milk wagon which was open in front, with an open door on either side. He was familiar with the location of the railway tracks, frequently crossed them, and knew that a passenger train on the Minneapolis & St. Louis Railway went east about the time of the accident. The train appears to have been somewhat late on the day of the accident, but the record does not disclose the number of minutes. Harry was accustomed to deliver milk to customers in Oskaloosa for his father, who conducted a dairy near that city. He had delivered milk to about 100 customers on the day in question. Harry testified further that the ponies were gentle; that they were not afraid of the cars; that they were traveling in a slow walk; and that he could easily have stopped them at any time. As he approached the tracks of the Chicago, Burlington & Quincy Railway Company, which, as stated, cross Seventh Street 91 feet north of the Minneapolis & St. Louis Railway tracks, he saw a passenger train approaching from the east. He stopped his team until this train passed, and then proceeded southward until he was struck by the eastbound Minneapolis & St. Louis passenger train. He further testified that he looked west, just after crossing the Burlington track, but did not see the Minneapolis & St. Louis train. A plat introduced in evidence shows that his view to the west was cut off by the silo plant very shortly after he passed over the Burlington tracks. He testified that he heard a train whistle, and that he looked to see if it was the Minneapolis & St. Louis passenger train, due from the west about that time. Not seeing the train, as he testified, he then thought the sound came from the west-bound Burlington train which had just passed him. He testified that he continued to listen and to look west until his horses' heads were within three or four feet of the Minneapolis & St. Louis Railway track; that he then looked east and west again, just as the collision occurred. His view of the Minneapolis & St. Louis track to the east, after he passed the Burlington crossing, was unobstructed for at least a half mile.

The evidence of other witnesses who testified in plaintiff's behalf showed that a person standing in the center of Seventh Street 25 feet north of the center of the railroad crossing had a plain, unobstructed view to the west of at least 500 feet. A photograph of the silo plant and surroundings, taken in the center of Seventh Street 30 feet north of the center of the Minneapolis & St. Louis crossing, shows that a train approaching from the west could be seen from that point for a distance of at least 400 feet. Evidently, the nearer Harry came to the crossing, the farther he could see a train approaching from the west. If the box car was standing at the southeast corner of the silo plant, his view to the west would have been to some extent obstructed thereby, as he approached the crossing; but manifestly it would not have interfered with his view when his team arrived within three or four feet of the track, nor for a considerable distance farther north. The only other possible obstruction mentioned by the witnesses is a pile of cement blocks in the yard east of the silo plant, and a fence five or six feet south thereof. The photograph offered in evidence, which appears to have been taken two days after the accident, shows the cement blocks, but not the fence. Counsel for appellant complain that the photograph does not correctly show the building and surroundings; but it is manifestly substantially accurate. The cement blocks were directly east of the building and north of the south side thereof, and, as the pile was not high, could not have materially interfered with the view of the tracks. There can be no question but that his view was wholly unobstructed for 237 feet west of the center of Seventh Street, the distance from that point to the silo company's building: that is, the ground is apparently about level, and there was no structure of any kind between Seventh Street and the silo plant.

The speed of the train is estimated by plaintiff's witnesses at from 30 to 35 miles per hour. Some of whom also testified that no whistle was blown or bell rung for the crossing. The injuries received by Harry necessitated the amputation of one leg, three inches below the knee. The defendant offered some testimony which tended to show that the view from the point in Seventh Street where the witness claimed to have looked east, just before going upon the crossing, if he had looked in

that direction, extended much farther west than claimed by plaintiff's witnesses; and that the box car, at the time of the accident, was west of the silo building, and was later moved to the southeast corner thereof by employees of the silo company, by the use of pinch bars. The testimony at this point being in dispute, we do not undertake to determine the question.

At the conclusion of all the testimony, the defendant moved for a verdict, upon the ground, among others, that plaintiff was clearly guilty of contributory negligence. This motion was sustained by the court.

The duty of pedestrians and drivers of vehicles approaching a railway crossing is so familiar and has been so often stated by us that we need not undertake a review of the cases. There was no fact or circumstance, so far as shown in the evidence, to distract the attention of the driver of the milk wagon as he approached the railway crossing. He had already passed the Burlington tracks, and knew that he was out of danger of the west-bound passenger train. According to his own testimony, he was not excited, and the team of ponies was gentle, easily stopped, and not afraid of the cars. He knew that a Minneapolis & St. Louis passenger train went east at about the time of the accident, and had it in mind as he proceeded toward the crossing. He heard a train whistle west of Seventh Street, and it then occurred to him that it might be the Minneapolis & St. Louis east-bound passenger train. He testified that he continued to look west, in anticipation of its approach, until his team got within three or four feet of the track. There would seem to be no possible doubt that, if he looked west when his team was within three or four feet of the tracks, the approaching train was within plain view. His vision at that point extended a considerable distance west of the silo plant, which, as stated, was 237 feet west of the center of Seventh Street. The view to the east of Seventh Street was unobstructed for at least half a mile at all points of observation between the tracks of the two railroad companies.

Aside from being a little behind in his school work, Harry appears to be an average boy of his age, and he knew the surroundings in the vicinity of the accident thoroughly, as well as the time of the trains on the Minneapolis & St. Louis Railway.

He was accustomed to drive the milk wagon, and at the time of the accident, was on his way home. Regrettable as the accident is, and giving full weight to the fact of age and other circumstances, we see no way of avoiding the conclusion reached by the trial court. The facts of the case bring it within the rule of numbers of our prior decisions. *Beemer v. Chicago, R. I. & P. R. Co.*, 181 Iowa 642; *Anderson v. Dickinson*, 187 Iowa 572; *Sackett v. Chicago G. W. R. Co.*, 187 Iowa 994; *Powers v. Iowa Cent. R. Co.*, 157 Iowa 347; *Waters v. Chicago, M. & St. P. R. Co.*, 189 Iowa 1097.

There is no claim by the defendant that the evidence was insufficient to establish negligence on its part, and we need not discuss this question. For the reasons pointed out, the ruling and judgment of the court below is sustained.—*Affirmed.*

ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.