OMA K. GLESSNER, Appellant, v. WATERLOO, CEDAR FALLS & NORTHERN RAILWAY COMPANY, Appellee.

No. 41550.

JUNE 20, 1933.

REHEARING DENIED SEPTEMBER 29, 1933.

John S. Tuthill, for appellant.

Swisher, Swisher & Cohrt, for appellee.

CLAUSSEN, J.—Dawson street is an east and west street in Waterloo, Iowa. Appellee operates an electric interurban road from Waterloo to Waverly. Its tracks cross Dawson street at right angles. On the north side of Dawson street, and east of the tracks, are three houses. The first house is 36 feet from the tracks. Its width is 35 feet. The space between the first and second house is 26 feet. The width of the second house is 29 feet. The distance between the second and third house is 23 feet. Between the third house and the first street intersection east of the tracks is a vacant lot. On the south side of Dawson street the space between the tracks and the first house east of the tracks is 29 feet. Photographs of the scene reveal some trees and a few small bushes, but the houses were the only substantial obstructions to a view of the tracks, when approached from the east.

On October 6, 1930, at about 4 o'clock in the afternoon, appellant was driving an automobile in a westerly direction approaching the tracks, at the rate of about 15 miles per hour. Appellant was familiar with the locality. When he was opposite the space between the second and third house east of the tracks, he looked to the right, or north. From this place he could see the tracks in the vicinity of the next street north of Dawson street. When he was opposite the space between the first and second house, appellant again looked to the north. From this place his view of the tracks embraced a section of the tracks extending 30 feet south of the street to the north. It appears that a satisfactory view of the track to the south could not be obtained until appellant was relatively near the track, appellant first said about 20 feet, but during an intermission in the trial he went to the scene and after that placed this distance at 42 feet. In any event, and without dispute, after looking to the north between the first and second house east of the track, appellant did not look in either direction until he arrived at the point where he could see the tracks to the south, and he then looked south. He says that, after he had made "good observation" to the south, he looked

to the north, that he was within 10 or 12 feet from the track when he looked to the north, and that he then observed appellee's car, coming from the north, at a distance of 30 or 35 feet, at a speed of 50 miles per hour. He could not bring his car to stop before reaching the tracks, so he turned his car to the south, but did not clear the track. His car was struck by the interurban car, and practically demolished, and he received very serious personal injuries.

The crossing over the tracks was in the center of the street and was made of planks 18 feet long. Appellant had been driving his car a little to the north of the center of the street, but as he approached the crossing he turned his car a little to the south so as to pass over the tracks on the planked crossing, but he testified that this was done without distracting his attention from his surroundings. The testimony reveals no diverting circumstances and no obstructions to view, except the houses hereinbefore referred to. After passing the first house east of the track the view of the track to the north was entirely unobstructed, and the track could be seen for a considerable distance.

The record presents this situation. Appellant looked to the north between the second and third house east of the track and again between the first and second house east of the track. From each of these positions he could see a portion of the track to the north, but the houses were present and obstructed the view, of the tracks, other than the vista between the houses. The first house east of the track was the last obstacle to a clear view of the track for a considerable distance to the north, and it was necessary to be in a position to see past this house before a full view of the track could be obtained. This house was 36 feet east of the tracks.

Appellant was driving his car at about 15 miles per hour. At this rate of speed he could stop it in from 20 to 22 feet. He repeatedly asserted that he was within 10 to 12 feet of the tracks when he first looked to the north, after clearing the first house east of the track, and he said that, at the speed he was driving, he could not stop his car in the distance between the place where he looked to the north and the tracks.

The testimony of other witnesses fixed the speed of the interurban car at from 45 to 50 miles per hour, and appellant and other witnesses, who were close at hand, testified that warnings of the approach of the car were not given by either whistle or bell.

I. A motion by appellee for a directed verdict, made at

the close of plaintiff's case, was sustained by the court upon the ground that plaintiff was guilty of contributory negligence. The action of the trial court in sustaining the motion was undoubtedly correct. The law does not undertake to direct whether a traveler upon the highway shall first look to the right or to the left before crossing tracks, or to fix the place where observation shall be made. It does require that the traveler shall look at a place where he can see, and that he shall then be in a situation to avoid injury by the operation of cars upon the tracks. Appellant could not predicate a reasonable belief that he could cross the tracks in safety, upon the observations made by him as he passed the spaces between the houses east of the track, even though appellee observed the law in the operation of its cars. Such observations gave him knowledge of what was transpiring on only a very short stretch of track at the next street to the north and for a short distance south of such street. His last observation to the north, between the houses, was made when he was 110 feet from the track. The first house east of the tracks was 36 feet from the tracks, 35 feet in width, and 39 feet in depth. Photographs show it located a short distance back from the sidewalk. This house blocked off appellant's view of the tracks from a point a short distance north of the street he was using to a point 30 feet, or so, south of the next street to the north. With appellant making an observation at a distance of 110 feet from the tracks and traveling at the rate of 15 miles per hour, this house would obscure from his view any interurban car proceeding at a rate of 20 miles per hour, or less, that would be on the street crossing when appellant reached the tracks. The precautions taken by appellant did not assure him safety from collision with cars operated well within the law. Appellant was familiar with the location. Although appellant knew that he could have an unobstructed view of the track to the north from the time he cleared the first house east of the tracks, until he reached the tracks, a distance somewhat greater than 36 feet, he did not look to the north until he was 10 or 12 feet from the tracks, and when he did look he was traveling at a rate of speed that would not permit him to stop before reaching the tracks. The collision would not have occurred if appellant had looked to the north while he traveled the distance in which he knew that an unobstructed view of the track was available to him. Concerning his duty to look, there is no question. Under similar circumstances this court has held the injured party guilty of contribu-

tory negligence as a matter of law. Bannister v. Illinois Cent. Ry. Co., 199 Iowa 657, 202 N. W. 766; Reynolds v. Hines, 192 Iowa 530, 185 N. W. 30; Ballard v. C., R. I. & P. Ry. Co., 193 Iowa 672, 185 N. W. 993; Yanaway v. C., R. I. & P. Ry. Co., 195 Iowa 86, 190 N. W. 21. The cases upon this proposition have been collected and carefully considered in a number of relatively recent cases and it is not necessary to repeat such collections of authority in this case.

 II. Appellant complains because the court would not permit him to introduce in evidence an ordinance limiting the speed of appellee's car to 20 miles per hour, and argues that the observations made by him to the north, as he passed the spaces between the houses, assured him that he might safely cross the track so far as cars coming from the north, at a lawful rate of speed, were concerned, and that consequently the court was in error in directing a verdict for appellee on the ground that appellant was guilty of contributory negligence. It is undoubtedly true that appellant had the right to assume that appellee's servants would obey the law, and for the purpose of this discussion it may be assumed that the lawful rate of speed for appellee's car was 20 miles per hour. The testimony of appellant indicates only that, as appellant looked north between the houses, he could see the tracks at the next street to the north and for a distance 30 feet south of such street. A photograph incorporated in the record seems to indicate that the view would extend a little further south than 30 feet. In any event the record discloses that, as appellant approached the tracks, he had two views of a relatively short piece of track a distance of about a block, of undisclosed length, from the street on which he was traveling. The remaining portions of the track to the north were obscured from view. His last view of this portion of the track was had when he was 110 feet from the tracks. We know of no method of calculation or process of deduction by which it can be determined that, unless a car was upon the short piece of track open to view from one or the other points of observation, appellant would be safe from danger from a south-bound car unless it was traveling more than 20 miles per hour. The duty to look before entering upon a railroad crossing is a continuing duty. Nederhiser v. C., R. I. & P. Ry. Co., 202 Iowa 285, 208 N. W. 856. Appellant was not required as a matter of law to look at the last possible moment before proceeding upon the tracks, nor at any particular point; neither was he required to look continuously. But he knew that for a dis-

tance, somewhat over 36 feet, before reaching the tracks, he had an unobstructed view to the north, and it was his duty, under the cases cited above, to avail himself of this opportunity for observation at some place or other, in time to avoid going upon the crossing, if danger threatened. Regardless of the ordinance and the negligence of appellee, however great or wanton it may have been, the fact remains that appellee could only injure appellant after he had driven upon, or in close proximity to, the tracks. Under his own testimony, and it stands uncontroverted and without inconsistency, appellant placed himself in the position of danger, without taking the care for his own safety required of him by law. The naked statement of the facts is the most convincing argument that can be made to demonstrate that appellant's injuries were due to his own carelessness.

In the view we take of the case, the ruling of the court on the admissibility of the ordinance was without prejudice to appellant and need not be considered. Appellant assigns errors in various forms. The foregoing discussion, in effect, disposes of all errors assigned.—Affirmed.

KINDIG, C. J., and EVANS, ALBERT, DONEGAN, and STEVENS, JJ., concur.