JOHN E. LUTZ, Appellee, v. JAMES C. DAVIS, Director General, Appellant.

RAILROADS: Accidents at Crossings—Contributory Negligence. Evidence relative to a railway crossing accident reviewed, and held to present a jury question on the issue of contributory negligence.

APPEAL AND ERROR: Reservation of Grounds—Want of Exceptions. An order refusing a new trial is not appealable, in the absence of an exception to such order.

NEW TRIAL: Verdict—Excessiveness—$12,000. Verdict of $15,500, reduced by the court to $12,000, for personal injuries, held nonexcessive.

*Appeal from Jasper District Court.*—CHARLES A. DEWEY, Judge.

FEBRUARY 13, 1923.

REHEARING DENIED MAY 18, 1923.

ACTION to recover damages for an injury caused by a collision between an automobile driven by the plaintiff and a railroad train, at a street crossing. Verdict for the plaintiff, and defendant appeals.—*Affirmed.*

*J. G. Gamble, R. L. Read,* and *C. O. McLain,* for appellant.

*McCoy & McCoy* and *Korf & Korf,* for appellee.

FAVILLE, J.—About five o'clock in the afternoon of September 21, 1918, the appellee was driving an automobile in a westerly direction on Washington Street in the town of Monroe.

1. RAILROADS: accidents at crossings: contributory negligence.

This street crosses the railway tracks of the Chicago, Rock Island & Pacific Railway Company on an angle, the right of way at that point extending in a general northwesterly and southeasterly direction. The plank crossing of the railroad track is not in the center of the street, but to the north side, and is described as being rough, the rails being somewhat higher than the planks. The first street east of the crossing and at right angles to Washington Street is Jasper Street. The west curb line of Jasper Street is 60 feet east of the crossing. There are trees, houses, and other obstructions on both sides of Washington Street, as one proceeds westward toward the railway crossing, until in the vicinity of Jasper Street. There is a house on the northeast corner of the intersection of Washington Street and the railroad right-of way. It is approximately 47 feet from the center of the crossing to the southwest corner of this house. There is a tree 27 feet from the southwest corner of the house, next to the sidewalk. It is 33 feet from the center of the crossing to this tree. Another tree is about 18 feet east of this tree, and another about 16 feet west of the southwest corner of the house. The limbs of these trees were about 8 feet from the ground, and had a spread of 25 to 40 feet. There were also weeds and brush along the right of way, some of which were about 10 feet high. The evidence tended to show that, when one is in the center of Washington Street, 60 feet east of the rails, a view could be had up the track to the north and west about 122 feet, and that from this point one could see about 150 feet to the south and east. At a point 50 feet east of the track, one could see about 10 feet farther to the northwest. The appellee testified that he was driving at a speed of from 10 to 15 miles an hour; that he was thinking about the crossing and about a train he had seen a few moments before, near the depot, to the

southeast; that, as he approached the crossing, he slowed down, and looked for a train; that he looked north when about 60 or 70 feet from the crossing, and from the point where he looked to the north, he could see from 120 to 150 feet up the track; that he then looked in the opposite direction, toward the depot; that he slowed down as he came to Jasper Street, and, after looking both ways, speeded up a little, and was going about 10 miles an hour, and could have stopped his car in about 10 feet. It was a Ford car. The train struck the automobile on the right-hand side of the radiator, and threw the appellee out, inflicting the injuries complained of. The appellee testified that he both looked and listened, and that he did not see or hear the train before it hit him. The evidence shows that the appellee had previously observed a train that was then on the tracks near the depot. The evidence tends to show that the train that caused the injury was moving at a speed not to exceed 20 miles an hour. An ordinance of the town of Monroe limits the movement of trains within the town limits to a speed of 10 miles an hour. There was evidence tending to show that the bell was not rung as the train approached the crossing in question, and that the engine was not puffing or emitting smoke at the time. The fireman, who was on the left side of the cab of the engine, was sitting with his face to the rear of the train, looking for a signal, and did not see the appellee until after the collision. The engineer, on the opposite side of the train, did not see him. It is conceded that the question of the negligence of the appellant was for the jury.

I. The first question presented for our consideration is with regard to the question of contributory negligence on the part of the appellee. It is urged in behalf of the appellant that the trial court should have directed a verdict in its behalf, on the ground that the appellee had failed to prove his freedom from contributory negligence.

We have not attempted to set out in minute detail all of the facts surrounding the accident, but sufficient to indicate the general situation and the conduct of the appellee in attempting to cross the railroad track at the time of the collision.

The question of contributory negligence in actions of this character, involving collisions between a train and a vehicle on

a railroad crossing, has been frequently before the courts. The rules of law applicable to cases of this kind are well defined, and should be generally understood. The difficulty lies in applying the well established rules to the facts of any particular case. These rules have been reiterated time and again in the pronouncements of this court. Ordinarily and usually, the question of whether or not a plaintiff in an action of this character has been guilty of contributory negligence is one for the determination of the jury. This is true because the question as to whether or not a party has been guilty of contributory negligence is usually a question of fact. Contributory negligence is such an act or omission on the part of a plaintiff as amounts to a want of ordinary care, which, co-operating or concurring with a negligent act by the defendant, is the proximate cause of the injury complained of. The degree of care which a plaintiff must exercise in order to be free from contributory negligence is that degree of care which a man of ordinary prudence and caution would exercise under the same or similar circumstances. It is obvious that the question as to whether or not a plaintiff has conducted himself as a man of ordinary care and prudence would have acted under the same or similar circumstances is a fact question, ordinarily and usually to be determined by the jury under the evidence in any given case.

But there are cases in which it is the duty of the court to direct the jury to return a verdict for a defendant on the ground that the evidence shows that the plaintiff in the action had been guilty of contributory negligence, or a want of ordinary care. This situation arises when it appears that the plaintiff has failed to establish material facts essential to show the exercise of due care. In such instance, it is the duty of the court to direct a verdict for the defendant. The basic and fundamental reason for this is that, in such a situation, there is no question to submit to the jury in this regard, under the established rules of law.

The general rules of law regarding the duty of one about to cross a railway crossing, in order to be free from contributory negligence, are not intricate nor obscure. All courts agree that due care requires that a traveler, under such circumstances, must use his senses of sight and hearing, before attempting to cross

a railway track, and in order to be free from contributory negligence, must look and listen for an approaching train. A failure so to do constitutes negligence on his part, as a matter of law. Now, if such plaintiff fails to prove that he did look and listen, then, applying the established rules of law, the court must hold that, as "a matter of law," the plaintiff has failed in an essential legal requisite of his proof, and cannot recover.

Since the advent of the automobile it has been suggested by some decisions that due care requires that a traveler approaching a railroad crossing shall have his automobile "under control." It is a matter of common knowledge that the ability to greatly increase the speed of an automobile by the simple expedient of depressing the accelerator (or, as it is more commonly and vulgarly designated, by "stepping on the gas") has promoted the temptation in numerous instances to endeavor to "beat the train" at a railway crossing. Here again the courts are powerless to prescribe hard and fast rules of speed or of "control," other than the general rules that a plaintiff must *always* use ordinary care and prudence, and must do *all* the acts and things which a person of ordinary care and prudence would do under the same or similar circumstances.

The foregoing observations are elementary and confessedly quite academic. They may, however, serve to emphasize a fact, which should be patent, that no two cases of this character are ever identical in their facts in regard to contributory negligence. It therefore follows that precedents on this question are of value only because of similarity of fact situations; and even then it is apparent that there are almost invariably points of distinction and differentiation that, even though apparently slight, may serve to carry one case to a jury and require a directed verdict in another. The cases must all come under the same general rules and be measured by these rules.

It is sometimes said, by way of criticism, that the decisions of the courts cannot be harmonized, and that they are "in hopeless conflict." It is most certainly true that the *facts* of the various cases cannot be harmonized, for the simple reason that no two cases are identical in their facts; but the general rules with regard to contributory negligence have been reiterated

time and time again, and adhered to throughout the decisions of the courts with a remarkable degree of consistency.

In cases of this character, it also often happens, necessarily, that a comparatively slight difference in the facts of any particular case may distinguish it from another case. It therefore follows that cases cited as precedents are of comparatively little value in actions of this kind. The courts are compelled to decide each particular case upon its facts, or want of facts, in determining whether or not the plaintiff therein has been guilty of contributory negligence, and must apply to the situation the general rules that have been so frequently announced and are so well established. Precedents with similar facts are valuable only as illustrating the application of the rules in somewhat analogous cases. It is scarcely possible to cite a case with facts so similar as to be ''absolutely controlling.''

The cases of this character necessarily fall into two general classes: one in which it has been held that, under the facts disclosed, the question of whether or not the plaintiff was guilty of contributory negligence was one for the jury. The other line of cases holds that, under the particular facts under consideration in each case, the evidence failed to show that the plaintiff was free from contributory negligence, and therefore that the court should have directed a verdict. These two classes of cases are not ''antagonistic,'' nor do they announce different rules of law, nor can it justly be said that ''they cannot be reconciled,'' or that they ''are conflicting'' or ''contradictory'' or ''in confusion.''

In the instant case, these two lines of authorities are presented for our consideration. A total of 144 authorities is cited, a great majority of them by the appellee. It is quite within bounds to say that they present nearly every possible state of facts that it could readily be imagined might arise in a railway accident case. They are each governed by the same general rules, however. There are in these different cases the many and perplexing questions surrounding a collision, such as the degree of light or darkness, the hour of day or night, the atmospheric conditions, the questions of grade and of angles; the questions of wet or dry paving, of cinder, dirt, or macadamized road; the questions of the speed of trains, automobiles, and teams; ques-

tions of minute measurements; such questions as the ability to stop, the opportunity to turn, the distance that an approaching train could be seen in each direction; and all of the other numerous things that enter into the final conclusion as to whether or not, under all the *facts and circumstances* disclosed, the plaintiff has been free .from contributory negligence. No one case can be used as a yardstick to measure another, because no two cases have yet arisen where the facts were identical. Cases frequently arise that are exceedingly perplexing, and so near the "border line" that it is no easy task to determine whether or not they present a question for a jury, under the proven facts on the question of contributory negligence.

We have heretofore set out the important facts in this case, and have read the entire record with care. Without reciting again the details of the evidence as above set forth, we think it was sufficient to carry the case to the jury on the question of the appellee's contributory negligence. The evidence shows that the crossing in question was more or less obscured. The appellee was not driving at an unreasonable rate of speed, and had his car under such control that he could have stopped it within a distance of ten feet. He knew of the presence of a train on the track near the depot, that might approach the crossing, and he was required to be on the lookout for the same. He had a right to rely, to a certain degree, upon the fact that the city ordinance prohibited the train from moving through the town at a greater rate of speed than ten miles an hour, and he also had a right to rely, to a certain extent, upon the duty resting upon the railroad company to give warning signals of its approach to the crossing. There is no conflict in the evidence upon the fact that he listened for such signals and that he looked in each direction for an approaching train. We think it was for the jury to determine, upon all of the facts and circumstances disclosed, whether or not the appellee was guilty of contributory negligence. The trial court properly held that, under the facts and circumstances disclosed in this record, the appellee made a case upon which he was entitled to go to the jury upon the question of contributory negligence.

II.   The appellant complains of certain phrases in one of the instructions given.

It is a doubtful question whether, under the record, the appellant is in a position to demand a review of the ruling of the trial court in this respect. It appears that the motion for new trial was taken under consideration by the trial court, and ruling thereon was entered in vacation, by agreement of the parties. It appears that no exception was saved at that time to the ruling of the court on the motion for a new trial.

**2. APPEAL AND ERROR: reservation of grounds: want of exceptions.**

Counsel for appellant appear not to have been present at the time the ruling was entered, nor to have been advised of the same until some time after it had been made. No showing is made that there was any oversight on the part of the court in said matter, or that there was any request that exceptions should be preserved to an adverse ruling, when entered in vacation. An order refusing a new trial is not appealable, when exceptions to such ruling were not preserved. *Wescott v. Des Moines City R. Co.*, 187 Iowa 1373; *Barnes v. Century Sav. Bank,* 147 Iowa 267; *Gibson v. Adams Exp. Co.*, 187 Iowa 1259. Notwithstanding this rule, we have examined the challenged instruction, and find no reversible error therein.

III. It is claimed that the verdict of the jury is excessive, and the result of passion and prejudice. The verdict as originally returned was in the sum of $15,500, and the trial court reduced it to $12,000.

The appellee sustained a fracture of the right femur and of the right knee cap, and suffered severe bruises and contusions. He was in bed about eight weeks. The broken femur has refused to properly ossify, and the appellee has undergone a second operation because of the defective union. The evidence tends to show that the injury is permanent. Appellee is compelled to

**3. NEW TRIAL: verdict: excessiveness: $12,000.**

wear a leather cast under the leg, with a strap over his shoulder, and to walk on crutches. Complete relief from his condition can only be had by an amputation of the limb. His expenditures for hospital and medical services and nursing were $606; and the injury to the automobile was about $240. The appellee was a farmer, a bachelor, and had an expectancy of about 16 years. His income at the time of the injury was approximately $1,000 a year.

Under all of the facts and circumstances, we are not disposed to reduce the verdict below the amount fixed by the ruling of the trial court.   The judgment, therefore, is—*Affirmed.*

PRESTON, C. J., EVANS, STEVENS, and ARTHUR, JJ., concur.