M. ERLICH, Appellee, v. JAMES C. DAVIS, Agent, Appellant.

RAILROADS: Accidents at Crossings—Negligence Per Se. The driver of a conveyance is guilty of negligence *per se* when, in approaching an unobscured railway crossing with which he is perfectly familiar, in full possession of his faculties, and with no distracting circumstance or emergency facing him, he, when 20 feet from the crossing, sees an engine approaching at a distance of 175 feet, and knows that the bell is not ringing, and thereafter drives upon the crossing without in any manner observing or judging of the speed of the engine; and this is true even though the engine is in fact running in violation of an ordinance relative to the speed of trains and to the ringing of the engine bell. (See Book of Anno., Vol. 1, Sec. 8018, Anno. 33 *et seq.*)

Headnote 1:   33 Cyc. pp. 1038, 1040, 1041.

Headnote 1:   3 L. R. A. (N. S.) 196; 24 L. R. A. (N. S.) 493; 22 R. C. L. 1020.

*Appeal from Allamakee District Court.*—H. E. TAYLOR, Judge.

APRIL 6, 1926.

REHEARING DENIED OCTOBER 4, 1926.

Action for the damage to a truck and the loss of services of the minor son of plaintiff resulting from personal injuries caused when the truck, driven by the son, was struck by an engine. There was a verdict for plaintiff, and from a judgment thereon the defendant appeals.—*Reversed*.

*Hughes, Taylor & O'Brien* and *D. J. Murphy,* for appellant.

*William S. Hart,* for appellee.

VERMILION, J.—The plaintiff sues to recover for the damage to a truck and the loss of services of his minor son resulting from injuries caused when the truck, driven by the son, was struck by an engine operated on the Chicago, Milwaukee & St. Paul Railway Company's tracks while the road was under Federal control.

The collision occurred at a crossing in the city of Lansing, between 4 and 5 o'clock on a day in June. The railway tracks from the station in Lansing run south along the west bank of the Mississippi River, parallel with and immediately adjoining Front Street, which is on the west of the tracks, for a distance of about 1,200 feet, to a point where North Street, running east and west, leads to the river bank, crossing Front Street and the tracks at right angles.

The ground is practically level, the railway tracks being slightly higher than the surface of Front Street. There are no buildings or other obstructions to the view between Front Street and the tracks, and one on the street has at all times an unobstructed view of the tracks for this distance. There are two tracks from a point north of the station to a point south of the North Street crossing, the one next to Front Street being the main line, and the other a passing track. There is a switch block in the main line about 500 feet south of the station, leading to a sidetrack.

At the time of the collision, appellee's minor son was driving the truck south along Front Street, intending to cross the tracks at North Street and go to appellant's place of business, a fish house, on the river bank. At the crossing, the truck was struck by an engine moving south on the main-line track. The truck was badly damaged, and the driver sustained a broken leg.

The ordinances of the city made unlawful the running of a locomotive at a speed exceeding six miles per hour within the limits of the city, and required that the bell be kept constantly ringing while such locomotive was in motion. There was evidence that the engine, drawing only a caboose, was moving at a speed prohibited by the ordinances, and that the bell was not ringing.

The chief contention of the appellant is that the driver of the truck was conclusively shown to have been guilty of contributory negligence. The driver was, at the time of the accident, 15 years of age. The truck was used in the appellee's business, and the son had driven it the season before, and for some ten days immediately preceding his injury. He was in full possession of his faculties, and familiar with the crossing and the relative position of the street and the railway tracks. The truck was empty, and he was alone, and, as has been said, driving south on a street immediately adjacent to and parallel with the tracks. He testified:

"I was driving south on Front Street, and as I approached the crossing, I slowed my motor down, and looked to my left at the track, and I saw the head end of an engine approaching. I heard no bell ringing, and I surmised that the train was coming down the track and stopped to back up to the switches,—had to spot cars; and so surmising, I slowed my car, as one does with a Ford, and proceeded to cross the crossing. The engine appeared to be perhaps halfway up to the switch, or possibly 150 or 175 feet from the crossing. That is where the front of the engine was, at the time I started over the crossing. I was 12 to 20 feet from the crossing at that time, and going about 7 miles per hour. I knew the speed limit of trains was 6 miles per hour, as I had heard people talk about it, and there are signs on the railroad right of way, saying, 'Slow down to 6 miles per hour.' The bell was not ringing on the engine when I saw it. I could not tell anything about the speed of the engine. I drove across the track because, when I neared the track, I looked out, and I saw the head of the engine coming on, and I thought that the engine was either to come down and back up into the switch, in which case it would not reach the crossing, or, if the engine were to continue and come past the crossing, I should have sufficient time to go way beyond the crossing, and possibly,—why, I could have gone even to the fish house by the time that the train got to the crossing, if it were traveling slowly. I drove up to the railroad track, and as the left front wheel of the car reached the track, I looked up, and there right up on the car was the train; and just as I looked up, and immediately afterwards, there was a tremendous bang, and I heard the train rush by, and I fell, and was assisted in getting up by Mr. Hogan."

On cross-examination he testified:

"I saw the head end of the engine, and I slowed down my automobile to about one mile an hour. I was going very slow, and I glanced out the side of the car and saw this engine coming, and it was coming then about 150 to 175 feet away. I turned around, and I then started across the crossing; and I did not look in the direction of the engine again until I got just to the crossing, when the front wheel was on the track. The engine was then a few feet—8 to 12 feet—away. I ran my car in low from the time I saw the train until one wheel was on the rail, and was traveling 7 miles per hour. There wasn't anything that obstructed the view between the point where I slowed down my engine and looked up and saw the train, until I reached the crossing. * * * I couldn't say whether it was 12 or 20 feet from the crossing when I saw the engine approaching, and I proceeded on. I thought I could cross if the train was going slowly. I misjudged the speed of the train, as it was going faster. When I turned around and saw the train coming, I didn't estimate the speed. I could see it plainly."

Appellee relies upon the oft repeated and well settled doctrine that one about to cross a railway track has, to some extent, a right to assume that trains will not be run at a rate of speed in violation of an ordinance governing their speed at that point, and that signals required by statute will be given, on the approach to the crossing. It is contended that the driver of the truck, when he saw the approaching engine, had a right to assume that it was not moving at to exceed six miles per hour, the limit fixed by the ordinance, and that, had this been its speed, he had ample time to have crossed the track in safety; and further, that he had a right to assume, in the absence of any signal by the engine bell, such as the statute required, that the engine was switching cars in the yard, and would not pass over the crossing at all.

The difficulty is not with the doctrine for which appellee contends, but with its application to the undisputed facts in the case. The doctrine has frequently been invoked in aid of one who failed to discover an approaching train. *Moore v. Chicago, St. P. & K. C. R. Co.,* 102 Iowa 595; *Case v. Chicago G. W. R. Co.,* 147 Iowa 747; *Davitt v. Chicago G. W. R. Co.,* 164 Iowa 216; *Haven v. Chicago, M. & St. P. R. Co.,* 188 Iowa 1266; *Barrett v.*

*Chicago, M. & St. P. R. Co.,* 190 Iowa 509 ; *Butterfield v. Chicago,
R. I. & P. R. Co.,* 193 Iowa 323 ; *Dombrenos v. Chicago, R. I. &
P. R. Co.,* 194 Iowa 1161 ; *Corbett v. Hines,* 194 Iowa 1344. It
has been applied where the traveler looked, and did not see any
train for such a distance that he could cross in safety if a train
beyond his range of vision was approaching at lawful speed.
*Camp v. Chicago G. W. R. Co.,* 124 Iowa 238; *Wolfe v. Chicago
G. W. R. Co.,* 166 Iowa 506. It has been applied where the
traveler had seen a train at the depot some distance away, that
might approach the crossing. *Lutz v. Davis,* 195 Iowa 1049.

Here, the driver, when he was 12 or 20 feet from the cross-
ing, saw the engine approaching, 150 or 175 feet away. He testi-
fied that he thought that either it would stop and back up into the
switch, or, if it came on, that he would have time to cross. There
is no contention that he was confronted with any emergency, or
could not have stopped. He testified that he saw the engine, and
slowed down to about one mile an hour; that he thought he could
cross, if the train was going slowly; that he could not tell any-
thing about the speed of the train; that he misjudged the speed
of the train, as it was going faster; that he did not estimate the
speed.

Argument cannot make it plainer that he saw the approach-
ing train, practically stopped the truck, and then, without taking
any precaution whatever to ascertain the speed of the approach-
ing train, thought he could cross *if* the train was going slowly,
and proceeded.

Under such circumstances, appellee is in no position to rely
either upon the failure to have the bell ringing or the unlawful
speed, to relieve the driver of contributory negligence. While
the statute required the bell to be rung continuously until the
crossing was passed, the ordinance required the bell to be rung
while the engine was in motion within the city limits, and with-
out regard to the crossing. The driver knew that the engine was
moving, approaching the crossing, and that the bell was not
ringing. Since the bell was required to be ringing while the
engine was moving, he knew all that the ringing of the bell was
intended to warn him of, and that the warning had not been
given. He saw the engine approaching, and had full oppor-
tunity to know its speed; and the exercise of due care on his

part required at least the exercise of some care to ascertain its speed before attempting to cross in front of it.

To say that one about to cross a railway track, who has an unobstructed view of, and sees, an on-coming train, and has the fullest opportunity to ascertain its speed, but fails to exercise the slightest care to do so, may, nevertheless, rely entirely upon the assumption that the speed is not, and will not be, in excess of the legal limit, and proceed onto the track, without being guilty of contributory negligence, would be to practically destroy the doctrine, and make the negligence of the railway company the sole requisite to a recovery. The traveler is never relieved of the duty to exercise reasonable care for his own safety. In *Davitt v. Chicago G. W. R. Co.*, supra, we said:

"The rule above stated is not intended as a means for excusing one from the exercise of ordinary care, a duty which is at all times imposed by law upon one approaching a railway crossing which is dangerous; but it is an element of fact or circumstance entering into the ultimate question whether such duty was observed. Cases arise where such reliance may not be placed upon the railroad company to meet that duty, * * *''

We have said that, in determining whether the traveler has exercised reasonable care, it is proper to consider that he had a right to rely *to some extent* on the observance by the railway company of statutes and ordinances. *Haven v. Chicago, M. & St. P. R. Co.*, supra; *Lutz v. Davis*, supra. We have also said that he has a right to so rely "if the contrary did not appear." *Barrett v. Chicago, M. & St. P. R. Co.*, supra. In the *Butterfield* case, supra, we said:

"He would not, of course, be justified in shutting his eyes and ears and failing to make reasonable use of his senses * * *.''

Again, in *Corbett v. Hines*, supra, we said:

"If the crossing be open and unobstructed, and the approach of trains thereto is in plain sight to a traveler making reasonable use of his senses, and he blindly goes ahead into an obvious danger, and is injured, he cannot complain if he is held chargeable with contributory negligence."

In *Case v. Chicago G. W. R. Co.*, supra, it was said:

"Of course one may not heedlessly drive upon railway tracks at street crossings without looking or listening for ap-

proaching trains and hold the railway company liable, no matter how negligent it may have been.''

In *Barkalow v. Chicago, R. I. & P. R. Co.*, 197 Iowa 248, we said, of the right of one about to cross a railroad track to assume that an approaching train will not be operated in a negligent manner, and that those operating it will comply with prescribed rules of law:

''This does not permit, however, a person in approaching a crossing to disregard known facts or excuse himself in the exercise of ordinary care on his part.''

In *Emerick v. Chicago G. W. R. Co.*, 199 Iowa 464, it appeared that the appellant drove upon the track in front of an approaching train, in clear view of the train, and did so because he thought the object he saw on the track was a box car. We said:

''It was the duty of appellant to discover, when he had an unintercepted view, whether the object he saw on the track was a box car standing thereon, or whether it was a moving train * * *.''

It has never been held that one about to cross a railway track has a right to rely entirely upon the observance by the railway company of such regulations, when he knows, or has full opportunity to know, in the exercise of due care for his own safety, that they have not been complied with, and escape the charge of contributory negligence.

The appellee wholly failed to establish freedom from contributory negligence on the part of the driver of the truck; but, on the contrary, the undisputed evidence shows that his negligence was a contributing cause of the collision. The court should have sustained appellant's motion for a directed verdict.

The judgment is—*Reversed.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.