MINNIE H. MEIER, Executrix, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY et al., Appellants.

No. 43625.

SEPTEMBER 28, 1937.

J. G. Gamble, R. L. Read, A. B. Howland, and Cook & Balluff, for appellants.

Hoersch & Hoersch, Chamberlin & Chamberlin, and Lane & Waterman, for appellee.

SAGER, J.—This case is one of much difficulty, not because of the absence of precedent on the subject involved, but rather because of the number of decisions on it, with the almost infinite variety of facts upon which they turn.

As a preliminary to the examination of the record, we can do no better in the way of stating general principles applicable than to quote the concise and lucid language of Faville, J., in Lutz v. Davis, 195 Iowa 1049, at page 1052, 192 N. W. 15, 17:

"The rules of law applicable to cases of this kind are well defined, and should be generally understood. The difficulty lies in applying the well established rules to the facts of any particular case. These rules have been reiterated time and again in the pronouncements of this court. Ordinarily and usually, the question of whether or not a plaintiff in an action of this character has been guilty of contributory negligence is one for the determination of the jury. This is true because the question as to whether or not a party has been guilty of contributory negligence is usually a question of fact. Contributory negligence is such an act or omission on the part of a plaintiff as amounts to a want of ordinary care, which, cooperating or concurring with a negligent act by the defendant, is the proximate cause of the injury complained of. The degree of care which a plaintiff must exercise in order to be free from contributory negligence is that degree of care which a man of ordinary prudence and caution

would exercise under the same or similar circumstances. It is obvious that the question as to whether or not a plaintiff has conducted himself as a man of ordinary care and prudence would have acted under the same or similar circumstances is a fact question, ordinarily and usually to be determined by the jury under the evidence in any given case.

"But there are cases in which it is the duty of the court to direct the jury to return a verdict for a defendant on the ground that the evidence shows that the plaintiff in the action had been guilty of contributory negligence, or a want of ordinary care. This situation arises when it appears that the plaintiff has failed to establish material facts essential to show the exercise of due care. In such instance, it is the duty of the court to direct a verdict for the defendant. The basic and fundamental reason for this is that, in such a situation, there is no question to submit to the jury in this regard, under the established rules of law.

"The general rules of law regarding the duty of one about to cross a railway crossing, in order to be free from contributory negligence, are not intricate nor obscure. All courts agree that due care requires that a traveler, under such circumstances, must use his senses of sight and hearing, before attempting to cross a railway track, and in order to be free from contributory negligence, must look and listen for an approaching train. A failure so to do constitutes negligence on his part, as a matter of law. Now, if such plaintiff fails to prove that he did look and listen, then, applying the established rules of law, the court must hold that, as 'a matter of law,' the plaintiff has failed in an essential legal requisite of his proof, and cannot recover. * * *

"The foregoing observations are elementary and confessedly quite academic. They may, however, serve to emphasize a fact, which should be patent, that no two cases of this character are ever identical in their facts in regard to contributory negligence. It therefore follows that precedents on this question are of value only because of similarity of fact situations; and even then it is apparent that there are almost invariably points of distinction and differentiation that, even though apparently slight, may serve to carry one case to a jury and require a directed verdict in another. The cases must all come under the same general rules and be measured by these rules."

On the statement of facts which will appear later, the al-

leged absence of the ordinary crossing signal, the failure of an automatic gong to operate, and a violation of a speed ordinance, distinguish the instant case from the many cited in the briefs of the parties. In announcing the conclusion hereafter expressed, we assume, without deciding, that the jury was warranted in finding the defendant guilty of negligence on all of these grounds.

We have then the question whether the failure of Meier to take notice of the approach of the train, under the facts, made him guilty, as a matter of law, of contributory negligence. Under many decisions of this court the decedent would have been guilty of such negligence without question, except for the fact that he had a certain right to rely both upon the automatic signal and upon the ordinance which regulated the speed of trains over the crossing on which he was killed.

To one even passingly familiar with the number of cases upon the questions involved it will be apparent that an examination of even a small part of them is out of the question, and we content ourselves with calling attention to a few which seem to us to stand out as guides to a correct solution of the problem confronting us.

Among the propositions about which there may be no dispute is that the traveler and the railroad company are under mutual and reciprocal rights and duties. This statement is to be taken with the implied limitation stated by this court in Dombrenos v. Chicago, R. I. & P. R. Co., 174 N. W. 596, at page 598 (not reported in Iowa reports), Weaver, J., speaking for the court:

"It is true that for manifest reasons the passing train has the preference or right of way over the driver of an ordinary vehicle, but, subject to this rule, the railway company and the driver stand on equal footing in the matter of right to use the crossing, and each is bound to exercise that right in a manner not to unnecessarily increase the dangers naturally incident to such use, and each may rightfully place some degree of reliance upon the performance of that duty by the other. Those duties may be, and often are, emphasized by circumstances which render the crossing unusually dangerous, thus calling for greater watchfulness, but the rule of reasonable care remains the same, though what is reasonable care under some circumstances may

not be reasonable under others. Every collision or other accident is marked by more or less varying surroundings. No two are in all respects alike, and negligence of the one party and contributory negligence of the other are questions to be determined by consideration of all the circumstances.''

Through all the cases there runs as a thread the general principle that both the traveler and the railroad must use such care as a reasonably prudent person would exercise under the circumstances, either as they actually were, or as they might appear to one acting with the required prudence and care. Another principle upon which there seems to be little or no difference of opinion is that it is negligence *per se* to violate a statute or ordinance duly passed as a measure of safety for persons or property. Related to this is the general, though perhaps not universal, rule that negligence on the part of the railroad company because of a failure to observe statutory regulations, is not an excuse for the traveler to fail to use those precautions which ordinary prudence and care would suggest to one attempting to pass over a railroad crossing. Herein lies the difficulty in the case we are called on to decide. As indicated above, the jury could have found that the automatic signal installed at the crossing where the accident under investigation occurred was not operating. It is admitted by the railroad company that the speed of its train was a clear violation of the ordinance, being 55 to 60 miles per hour. The jury could also have found that the ordinary crossing signal was not given, though a contrary finding on this point would have had plenty of support in the record.

We have recently had occasion to refer to many of the cases touching the proposition suggested. Vermilion, J., speaking for the court in Crowley v. Chicago, B. & Q. R. Co., 204 Iowa 1385, 213 N. W. 403, 53 A. L. R. 964, supp. to note, 99 A. L. R. 729, at page 732. A reference to this opinion will give a very fair estimate of the general state of the law on this question in this and other jurisdictions.

A few general references may serve to throw light on the question. In Sodemann v. Chicago, M., St. P. & P. R. Co., 215 Iowa 827, 244 N. W. 865, we held that a motorist who failed to see or hear plainly visible and audible passenger train which struck him as he drove on the track was contributorily negligent, and, at page 830 (page 866 of 244 N. W.), we said:

"Inasmuch as he failed either to see what was plainly visible or to hear what was clearly audible, he is deemed under the 'physical evidence' rule not to have looked or listened at all."

So too, we have held that a driver who approaches an unobscured crossing, with no distracting circumstance or emergency facing him, even though the engine is running in violation of an ordinance relative to the speed of trains and to the ringing of the bell, is guilty of contributory negligence *per se*. Erlich v. Davis, 202 Iowa 317, at page 322, 208 N. W. 515.

And in Miller v. Illinois Central R. Co., 223 Iowa 316, 319, 272 N. W. 96, 97, it is said:

"Even conceding that the defendant was guilty of negligence, if the plaintiff himself contributed in any way to the injury he received he was guilty of contributory negligence, and therefore cannot recover. This is the settled law in this state; it has been reiterated about every time the subject has been talked about by the courts. Under this record here as made by the plaintiff, which is practically undisputed, it might very well be found that not only was plaintiff guilty of contributory negligence, but that his negligence was the proximate cause of the injuries which he sustained."

An analogous case is Lockett v. Grand Trunk Western R. Co., 272 Mich. 219, 261 N. W. 306, 308, wherein the court said:

"While it is difficult to lay down a positive rule which may be applied to all cases, it must be remembered that railroads of necessity are operated at a high rate of speed, in accordance with public demand, that they proceed over their own right of way, and that mechanical devices installed to warn the public may get out of order. Therefore, while an approaching train must give proper warning, and while the silence of the protective device is an indication to the traveler that no train is approaching, nevertheless the driver is not thereby relieved of the duty of making due observation, but must use his own senses of sight and hearing to ascertain for himself whether a train is in fact approaching, and, if he fails to look at all where he has an unobstructed view and where he could undoubtedly have seen the train in time to avoid an accident, had he made any observation, he is guilty of contributory negligence as a matter of law."

See, also, Sohl v. Chicago, R. I. & P. R. Co., 183 Iowa 616, 167 N. W. 529; Sala v. Chicago, R. I. & P. R. Co., 85 Iowa 678, 52 N. W. 664.

For a comprehensive collection of cases as to how far "recovery against a railroad company for the failure of a signaling device to operate at a railroad crossing and warn of the approach of a train, may be defeated by proof of contributory negligence on the part of the traveler in putting too much reliance on the signal and not employing that degree of care for his own safety which the law demands," see note to Crowley v. Chicago, B. & Q. R. Co., 204 Iowa 1385, 213 N. W. 403, reported in 53 A. L. R. 964, at page 965, and supplement to the same note, 99 A. L. R. 729, at page 732.

Even where the railroad company has failed to observe statutory requirements, we have said:

"Appellee relies upon the oft repeated and well settled doctrine that one about to cross a railway track has, to some extent, a right to assume that trains will not be run at a rate of speed in violation of an ordinance governing their speed at that point, and that signals required by statute will be given on the approach to the crossing. * * * The difficulty is not with the doctrine for which appellee contends, but with its application to the undisputed facts in the case. The doctrine has frequently been invoked in aid of one who failed to discover an approaching train. (Citing cases.) * * * To say that one about to cross a railway track, who has an unobstructed view of, and sees, an oncoming train, and has the fullest opportunity to ascertain its speed, but fails to exercise the slightest care to do so, may, nevertheless, rely entirely upon the assumption that the speed is not, and will not be, in excess of the legal limit, and proceed onto the track, without being guilty of contributory negligence, would be to practically destroy the doctrine, and make the negligence of the railway company the sole requisite to a recovery. The traveler is never relieved of the duty to exercise reasonable care for his own safety." Erlich v. Davis, 202 Iowa 317, at page 320, 208 N. W. 515, 516; Rosenberg v. Des Moines R. Co., 213 Iowa 152, 238 N. W. 703; Yanaway v. Chicago, R. I. & P. R. Co., 195 Iowa 86, 190 N. W. 21; 52 Corpus Juris, Title, Railroads, secs. 1855, 1905, 1907, at page 334, catch line: "Duty to look and listen"; sec. 1937.

Perhaps the case which most strongly supports the contentions of the plaintiff herein is Dombrenos v. Chicago, R. I. & P. R. Co., 194 Iowa 1161, 191 N. W. 158. The length of the opinion and the number of cases cited make it impossible that we quote therefrom, but a reference to the authorities therein contained will present many, if not all, of the contentions made by plaintiff-appellee herein.

■■■ With the foregoing principles in mind we turn to a consideration of the facts disclosed by the record.

Meier, up to the time of his death, was in good health, and had been an insurance agent in the city of Davenport for a number of years. The automobile in which he was riding was "in good shape", having been gone over by a mechanic two days before Meier was killed. While the record is not very definite upon that subject, it appears that at the time of his death Meier was proceeding toward a place called Nahant, which is presumably a small town about 2500 feet west of the crossing where the collision occurred. He had been engaged in the insurance business for 25 years, and had transacted some at Nahant through the years. How many times he had passed over this particular crossing does not appear. The record discloses that there was another street by which he could have reached this place; but the witness Camp, with whom the deceased had done some insurance business, testified that the transactions which Meier had with his client at Nahant would involve his going down the road upon which he met his death.

Plaintiff's principal witness was one Minnie Fregin, who had lived in the vicinity of this crossing 26 years and was perfectly familiar therewith. The accident here involved occurred about 4 o'clock in the afternoon of November 1, 1933. She was driving toward Davenport at the time, the other occupant of her car being her sister, who was in the rear seat. We pass over her testimony with reference to crossing signal or automatic gong, because we assume, as has already been stated, the defendant's negligence in that regard. The crossing and roadbed at that point, and for at least 2500 feet west, were about eight feet above the level of the highway upon which Meier was traveling. Meier was moving south, over a good road, and passed the witness Fregin at the foot of an incline from the level of the highway leading to the level of the tracks, a distance of perhaps 30 feet north of the first railroad track. It should be noted that there

were three tracks on this crossing: the north, or the first of them in the line of Meier's approach, was the westbound; the next the eastbound; and the third a house, or passing, track. Meier was killed by a train approaching from the west on the middle track. He recognized the witness Fregin and nodded to her in passing, just as he started up the incline to the level of the defendant's roadbed. This witness said that shortly after passing she and her sister heard "a terrible shriek of the train," and looking back saw that plaintiff had been struck by the train.

For the purpose of making clear the situation, we insert defendant's Exhibit A. [See page 304.]

This picture was taken from a point 200 feet east of the crossing and looking in the direction from which the train came. The figure of the man on the crossing indicates the point at which the accident occurred, and the building in the middle distance, to which the arrow points, has been designated as the yard office of the defendant at Nahant. This building is 2500 feet west of the crossing. The eaves of this building were in the neighborhood of 13 or 14 feet above the level of the track, and the top of the cab of the engine was 16 feet from the track. These figures are noted for the purpose of giving an idea of the height of these objects as they were when Meier approached. The railroad tracks and the crossing intersect at right angles. As the plaintiff came from the north, for a distance of at least 300 feet he had a clear view of the railway, and there was at a distance of from 200 to 300 feet on the right-hand side a warning sign indicating the presence of the railway tracks. As he proceeded south to the crossing until he reached a place 141 feet north of the crossing, he probably had no view of the track or of an approaching train. From thence to the track he had a clear and unobstructed view of the railroad track westward to the yard office at Nahant, 2500 feet. After he approached to within 84 feet of the tracks, he still had a clear and unobstructed view, not only of the right of way but even of the iron itself of the railroad tracks, to a point nearly half a mile west. There were, so far as the record discloses, no incidents to divert his attention from what was before him, unless the passing of the Fregin car amounted to that.

Meier was instantly killed and we have not the benefit of his testimony as to what he was doing, what was engaging his attention, and why he had not seen the train approaching.

304

Defendant's Exhibit "A"

Plaintiff's chief witness sustains the evidence of the defendant to the effect that the view of the railroad crossing was "wide open" westward to Nahant.

One Jager, a farmer living near the crossing, was sitting with a neighbor in his yard prior to and at the time of the collision. He was about 600 feet north at the time, this being the direction from which Meier was coming. Jager saw the train coming, and then saw the automobile "boosted in the air". This witness goes on further to say that when he heard the rumble of the train the automobile in which Meier was riding pulled up, and then backed up as if to talk with the lady (witness Fregin), and apparently stopped, then went back toward the track again. It appeared to him that Meier's automobile went up the incline a little and then backed up. He supposed, when he heard the rumble of the train and saw the Meier car drive up to the track, that he was waiting for the train to go by.

The fireman of the train which struck plaintiff, after testifying to the giving of the signals, said he noticed as the engine approached the crossing the Meier automobile. He saw it, according to his testimony, at about the time the whistle was started, 1300 to 1500 feet west. He claims to have observed him all the way, the automobile moving at 8 to 10 miles an hour. After first being seen by the fireman, Meier slowed down as he got close to the track. It appeared that he was going to stop, but, on the contrary, he seemed to speed up as the train approached and, as the engine neared the crossing, he took a little spurt and stopped squarely on the crossing. Up to that time, according to the fireman, Meier gave no indication that he did not intend to stop. When he reached the track, according to the testimony, Meier stopped as completely and perfectly as if that had been his intention, though no one claims that such was his purpose. It is sufficient to observe that whatever his purpose was, his movements brought him to a standstill squarely in the path of the oncoming train and he was instantly killed.

The engineer of the train, being on the right-hand or south side of the engine, did not see the Meier automobile until its right front wheel appeared in his line of vision along the right side of his engine. It was then, of course, too late to stop this heavy train, moving, as is admitted, from 55 to 60 miles an hour.

After crossing the railroad track the highway proceeds

southward approximately 700 or 800 feet, and then turns west parallel with the track, toward Nahant.

As one Burgoyne, a witness for the defendant, was driving north, and about the time he reached this bend and headed toward the railroad tracks, his attention was attracted by the whistle of this train. As the Meier automobile came up the approach from the other, or north, side of the roadbed, he saw it approach. At that instant the engine whistled, and this brought the situation to the attention of Burgoyne. This witness said with reference to the developments from then on:

"I then again directed my attention to the automobile and from where I was I thought he had started to back up. I knew he wasn't coming forward. I did not see the actual collision, the engine obscured the view. After I saw the automobile come up there and up to the time the engine obscured my view, I did not see the automobile make any other move except what I have already described. * * * I could not see the automobile until it drove up on to the track. I could not tell on what particular part of the railroad bed it was when I first saw it. After I looked at the train I again looked back at the automobile and at first it looked like he was backing up. He did not back down off the crossing. All I could be certain of was that he was not coming on. It remained stationary or practically so until the crash, and that was pretty quick."

The foregoing statement of facts, while meagre, gives a general view of the surrounding circumstances before and at the instant of collision. From it it will be seen that the case turns on whether Meier was contributorily negligent, having approached this crossing on a clear day, over a good road, with no obstruction and no diverting circumstances, without seeing a train which he could not have helped seeing, had he looked, along every foot of the way from a point 141 feet north of the crossing, such train in its approach being clearly visible for at least 2500 feet away.

On this record we hold that Meier was guilty of contributory negligence as a matter of law, and that plaintiff was not entitled to recover. As a necessary consequence, we likewise hold that the court should have sustained defendant's motion for a directed verdict.

Numerous complaints are lodged against the instructions of

the court, and, while some language used might well have been omitted, a consideration of the instructions together discloses no reversible error. On the contrary, they appear to have given the defendant all that it was entitled to. Some phrases, detached from their context, may seem ill-chosen, but on the whole we regard defendant's criticism of the instructions as hypercritical. We have examined all these objections, but do not stop to analyze them separately.

■■ But one other error assigned needs attention, and that is that the court erred in the admission of certain ordinances, among them one regulating the speed at which trains were permitted to operate within the corporate limits of Davenport. We do not take the time to go into detail with reference to this objection, the chief point of which seems to be that these ordinances did not have the approval of the railroad commission. If we have not mistaken the record, defendant seems to regard its objection to that effect as sufficient to require the trial court to reject this testimony, unless and until the plaintiff assumed and met the burden of proving that every step requisite to the enactment of a valid ordinance had been followed. Without pursuing the legal principles underlying this controversy, the writer of this opinion is of the belief that if there is anything wrong with these ordinances, either in substance or in the method of their adoption, it was up to the defendant to point out wherein.

Because of our holding that the evidence established the fact that Meier was guilty of contributory negligence as a matter of law, the judgment of the trial court should be and it is reversed.—Reversed.

All Judges concur, except DONEGAN, J., who takes no part.