EARL SWEARINGEN, Appellee, v. UNITED STATES RAILROAD AD-
MINISTRATION et al:, Appellants.

**RAILROADS:** Accidents at Crossing—Failure to See What Is Plainly
in View. A person who, possessed of normal sight and hearing, and
under nondistracting circumstances, approaches and goes upon a
railway crossing with which he is evidently familiar, with his ve-
hicle under perfect control, and has an unobstructed view of the
railway track for several hundred feet, and looks for a train which
manifestly is in plain sight, and fails to see it, is guilty of negligence
*per se.*

*Appeal from Waterloo Municipal Court.*—GEORGE W. WOOD,
Judge.

JUNE 25, 1921.

ACTION to recover damages for personal injuries. Verdict
of the jury and judgment for plaintiff. Defendants appeal.—
*Reversed.*

*J. G. Gamble, R. L. Read,* and *Pickett, Swisher & Farwell,*
for appellants.

*Pike, Sias & Zimmerman,* for appellee.

STEVENS, J.—Plaintiff, an experienced truck driver, while
in the act of crossing the main line track of the defendant rail-
way company on McKinley Street, in the city of Waterloo, on
the morning of April 7, 1919, was struck by one of the east-
bound passenger trains of defendant and severely injured. The
general direction of the tracks of the defendant railway com-
pany through the city of Waterloo at this point is east and west.
The track, however, curves from a point about 500 feet west of
McKinley Street to the northwest, and from the same point to
the east for a short distance to the southeast and then slightly
to the northeast, crossing McKinley Street. The tracks of the
Waterloo, Cedar Falls & Northern Railway Company intersect

with the main track of the defendant at a point approximately 475 feet west of the center of the crossing on McKinley Street.

Plaintiff was an employee of the Hawkeye Oil Company, which owned a garage fronting west on McKinley Street, the south side of which was 59.5 feet north of the north rail of the defendant's main track, measuring from the center of McKinley Street. The distance from the south rail to the entrance to the garage from McKinley Street was 95 feet. Plaintiff testified that, on the morning in question, he backed a heavy truck into the garage and attached a dead truck to the rear thereof, for the purpose of taking it up town. As he drove out of the garage, he passed well to the west side of McKinley Street, turning toward the south. A mechanic, also employed by the oil company, occupied the seat of the rear truck.

The surface of McKinley Street from the north is slightly upgrade. Plaintiff further testified that, when within 20 or 25 feet north of defendant's main track, he stopped the truck and looked and listened both ways for an approaching train, and that he neither saw nor heard a train approaching; that, immediately after starting the truck, he looked again, with the same result. The speed of the truck was, according to his best judgment, 3 miles per hour. The maximum estimated speed of defendant's train, which approached the crossing from the west, was 30 miles per hour. The minimum estimated speed thereof was 15 to 18 miles per hour. This was the speed testified to by the engineer in charge of the train. The view of defendant's track to the west from a point 20 or 25 feet north of the main track is unobstructed for a distance of from 475 to 700 feet, except that there was a small bush, without foliage, immediately west of McKinley Street and a short distance north of the track. Photographs offered in evidence, together with other evidence, show that the bush offered no appreciable obstruction to the view to the west. There is some possible conflict in the evidence as to whether or not some freight cars were standing on the track of the Waterloo, Cedar Falls & Northern Railway Company at the time of the accident. If so, their cars were not near enough to the defendant's track to restrict plaintiff's view to any great extent.

The grounds of negligence alleged are the failure of defend-

ant to maintain proper guard or gates on McKinley Street at the place of the accident; the failure to ring the bell or blow the whistle, as required by law; and the operation of its train at a greater rate of speed than that allowed by the ordinances of the city of Waterloo.

The sole question involved is whether plaintiff was guilty of contributory negligence. The truck which he was driving weighed approximately 6,700 pounds, and the rear truck about 4,200 pounds. The forward truck had a cab with windows on each side and in the rear. Plaintiff testified that he looked for an approaching train immediately after he started the truck, but did not look again until the train was within fifty feet of the truck; that his attention was attracted by short, sharp blasts of the engine whistle. He testified that, as he approached the crossing, he was looking back to see if the dead truck was trailing all right. He said he could have stopped the truck within 3 feet. The front wheels had just passed over the north rail when he saw the train approaching. At least three wholly disinterested witnesses testified that they heard the engine whistle blown a considerable distance west of McKinley Street, and again just before the collision occurred. All of the train men testified that the usual signals were given, and that the bell was being rung automatically as the train approached and passed the scene of the accident. The only contradiction of this testimony is that of several witnesses who were in a position to have heard the whistle if they had been listening, and who testified that they did not hear it until just before the collision. None of them claimed, however, to have been giving particular attention thereto. The mechanic who was riding in the rear truck testified that he heard no whistle or other signal. So far as the evidence shows, there was nothing to require plaintiff to continually observe the rear truck as he approached the crossing. He had already driven out of the garage and to the south for a distance of 75 or 80 feet on McKinley Street, a sufficient distance to substantially bring the rear truck into line. There was an automobile mechanic in charge, for the purpose of guiding it. Plaintiff also testified that 20 or 25 seconds elapsed between the time he stopped the truck and the collision, but he also testified that he was an experienced truck driver, and that the truck was

moving at substantially 3 miles per hour. Granting that it was moving at one half that speed, and that plaintiff looked for the approaching train immediately after the car was started, and also granting that the train was approaching at 30 miles per hour, the engine was plainly visible for a distance of at least 500 feet west from the crossing. The physical facts would seem to make it impossible for plaintiff to have looked and not to have seen the train. If the truck was, in fact, being driven at 3 miles per hour and the train at 30 miles, it was within 300 feet of the crossing when plaintiff looked. Plaintiff's attention was not distracted by anything in connection with the operation of the truck, or the surrounding circumstances. Even though he may have deemed it prudent to look back to see that the dead truck was in line, this did not excuse or prevent him from looking for the approaching train before going upon the track. He was driving at a very slow rate of speed, with the truck under such control that it could be stopped within 3 feet. The train was in clear view, and but a short distance away, when the truck passed over the north rail. Neither plaintiff nor the occupant of the rear truck saw the train until it whistled, just before the collision. Plaintiff at first made some movement to reverse the truck, but did not have time to prevent the accident.

We need not review our prior decisions, many of which are cited by both sides. *Barrett v. Chicago, M. & St. P. R. Co.,* 190 Iowa 509, *Rupener v. Cedar Rapids & I. C. R. & L. Co.,* 178 Iowa 615, and *Davitt v. Chicago G. W. R. Co.,* 164 Iowa 216, are as favorable to plaintiff's theory of this case as any cited in the brief of counsel. Plaintiff fails to bring the facts within the doctrine of any of these decisions. It is true that the operation of the defendant's train at a speed in excess of a town ordinance was emphasized and given some controlling significance in the *Barrett* case, but the facts therein presented differ essentially from the facts disclosed by the record in this case. Upon any theory of the facts discussed, the train must have been within sight when plaintiff claims to have looked, immediately after starting the truck; and a failure to see it was negligence. Looking at the situation as shown by the undisputed evidence of physical facts, we cannot escape the conclusion that plaintiff was guilty of such a want of reasonable care as to defeat re-

covery. One who looks, before going upon a railway crossing, for an approaching train, which is in plain view, and does not see it, is guilty of negligence, if he goes upon the crossing and is injured.

The speed of the train was in excess of that fixed by the ordinances of Waterloo, but plaintiff was not misled thereby. The jury were bound by the testimony and could not have found, under the evidence, that the train was not in view when plaintiff last looked. He admitted that he gave no further heed to the danger always to be apprehended at railway crossings. There was nothing in the fact that a dead truck was being trailed behind the one in which he was riding, to confuse him or to distract his attention so as to prevent or excuse him from not seeing the train. If anything, the presence of this additional truck should have increased, rather than have diminished, the degree of care to be observed. The merest glance, when within 5 or 6 feet of the track, would have enabled plaintiff to avoid the accident. It was his duty to use his senses of sight and hearing, and the failure of the defendant to sound the whistle or ring the bell, if shown, did not relieve him from this duty. There were no intervening obstructions; his truck was under control; nor was there anything reasonably calculated to confuse or distract the attention of plaintiff, or to prevent him from looking; and if he had looked, he must have seen the train. See *Williams v. Chicago, M. & St. P. R. Co.*, 139 Iowa 552. It is our conclusion that plaintiff was guilty of contributory negligence as a matter of law, and the judgment of the court below is, therefore,— *Reversed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.