J. J. YANAWAY, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC
RAILWAY COMPANY, Appellee.

WITNESSES:  Cross-Examination—Permissible Scope.  A photographer
who, on direct, identifies photographs of the *locus in quo* taken by
him under named conditions, may be cross-examined as to other pho-
tographs of the same place subsequently taken by him under the
same conditions.

RAILROADS:  Accidents at Crossings—Negligence Per Se.  The driver
of an automobile is guilty of negligence *per se* when, on a clear day,
and without any diverting circumstance other than the act of meet-
ing and passing another conveyance, he, with his car under perfect
control, approaches and enters upon a railroad crossing with which
he is perfectly familiar, knowing that, from a point 75 feet from the
crossing, his unobstructed view would, as he approached the crossing,
enlarge from 200 feet to 1,000 feet down the track, and takes no pre-
caution, except to look for a train at the 75-foot point and *thereafter
to listen,* and to look in a direction from which a train would *not*
approach.

APPEAL AND ERROR:  Presentation to Lower Court—Estoppel.  A
plaintiff who casts his pleading in the mold of *negligence,* and unsuc-
cessfully tries his case on that theory, may not, on appeal, for the
first time and manifestly as an afterthought, shift to the claim that
an isolated paragraph of his pleading justified a recovery on the
theory of *conversion.*

*Appeal from Jefferson District Court.*—D. M. ANDERSON, Judge.

OCTOBER 17, 1922.

REHEARING DENIED JANUARY 20, 1923.

ACTION for damages caused by a collision at a railway cross-
ing between an automobile driven by the plaintiff and a train
operated by the defendant. The court directed a verdict in be-
half of the defendant, and plaintiff appeals.—*Affirmed.*

*Thoma & Thoma,* for appellant.

*J. G. Gamble, R. L. Read,* and *Simmons & Ross,* for ap-
pellee.

FAVILLE, J.—Extending directly north from the end of North Fourth Street in the city of Fairfield is the Fairfield-Brighton Road. The railway track of the appellee runs parallel with Fourth Street and with said road for some distance north of the city limits of Fairfield, and is about 300 yards west of said street and highway. At a point about 1,900 feet from the railway crossing in question, the track of the appellee begins to curve to the northeast, and after the completion of the curve, about 1,000 feet from the crossing, passes in a practically straight line to the northeast. This causes the tracks of the appellee to cross the said highway at an acute angle. As one drives north on the highway in question, from the city limits, the track of the railway company is, therefore, parallel with the highway, and distant therefrom approximately 300 yards, until about 1,900 feet from the crossing, when the track curves toward the highway. Between 1,500 and 1,800 feet from the crossing is a mound of earth, next to the track and on the east side thereof. The view of a traveler going north on the highway is obstructed by the earth bank in question and by brush and weeds on the land between the highway and the railroad, and this obstruction continues until the traveler reaches a point approximately 75 feet south of the railway crossing. From this point, the view to the southwest along the line of the railway track extends 200 feet. As one approaches near to the crossing, the view down the railway track to the southwest necessarily extends a greater distance. At 50 feet south of the crossing, the view to the southwest down the tracks is approximately 1,000 feet, and at 35 feet from the crossing, the unobstructed view is practically the same distance.

On the morning of June 24, 1920, the appellant was driving a Ford coupe northward on the highway referred to. It was a clear day, the roads were dry, and as he approached near the railroad crossing, he was driving at approximately ten miles an hour, and says he could have stopped his car within a distance of about ten feet. The appellant was thoroughly familiar with the crossing, and had driven over it frequently. He testified that, as he approached the crossing, he looked for a train from the south, before his view was obstructed by the bank of earth and the brush and weeds, and that at all times while approach-

ing the crossing, he listened for the whistle of a train or the ringing of a bell; that his car was open, and his hearing good; and that at no time did he hear any signal given. As appellant was approaching the crossing from the south, he observed a tractor, with a road drag hitched to it, coming toward him from the north, and when within something like 100 feet from the crossing, he observed the tractor just upon the crossing, and noticed nothing about the conduct of the driver of the tractor indicating that there was any approaching train. He met this tractor about 30 or 40 feet south of the railway track, and had to turn out slightly to the east to pass by. Appellant testified that, just as he passed the tractor, he looked to the west, and did not see any train coming, and heard no train. He was struck upon the crossing by a train on appellee's track, moving toward the northeast. The train consisted of only an engine, tender, and caboose. The evidence tends to show that it was moving at a speed of some 40 to 60 miles an hour, and there was also evidence that no signals were given, as the train approached the crossing. Appellee's negligence is not questioned.

At the close of appellant's testimony, the court directed a verdict for the appellee, on the ground that the appellant was guilty of contributory negligence, as a matter of law.

I. The appellant produced as a witness a photographer, who took certain pictures, shortly after the accident, at and about the crossing in question, showing the conditions at the crossing from various viewpoints. The pho-

1. WITNESSES: cross-examination: permissible scope.

tographer identified different photographs he had taken, and on cross-examination, the appellee developed the fact that, shortly thereafter, the photographer had taken other pictures at the crossing, while the conditions were the same in all respects as they were when the pictures offered by the appellant had been taken. Over objections, the photographer, on cross-examination, identified the pictures subsequently taken, and, over appellant's objection, they were offered and received in evidence, as a part of the cross-examination of this witness. The appellant insists that this was reversible error.

The latitude that shall be allowed on cross-examination is largely a matter within the discretion of the trial court, pro-

vided that such cross-examination is pertinent and germane to
the examination in chief. It was within the reasonable latitude
of cross-examination to show that, at approximately the same
time and under the identical conditions, the witness had taken
other photographs than those offered on his direct examination.
The witness was produced for the purpose of identifying pho-
tographs showing the *locus in quo* and of testifying to the posi-
tion in which the camera was placed at the time the various
pictures were taken. The whole purpose and object of it was
to show by the witness, through the instrumentality of the ex-
hibits, the conditions surrounding the crossing. It was legiti-
mate cross-examination to show that, under the same conditions
and at approximately the same time, the witness took other pho-
tographs, showing the conditions surrounding the crossing from
different viewpoints. It is much the same as if a witness had
been produced to testify as to certain measurements at a given
place, and, on cross-examination, was asked in regard to whether
or not he made other measurements at the place, and if so, the
results thereof.

There was no abuse of discretion on the part of the trial
court in permitting this cross-examination and the introduction
in evidence of the exhibits identified by the witness.

II. It is appellant's main contention that he was entitled
to go to the jury on the question of contributory negligence.

The law in regard to the duty of a traveler on a public
highway who is about to cross a known dangerous and partially
obscured railway crossing has been repeatedly declared by this
2. RAILROADS: court, and applied under a great variety of cir-
accidents at cumstances. The question of whether such a
crossings: neg-
ligence *per se.* traveler has been guilty of contributory negli-
gence is generally a question to be determined by the jury, who
are to ascertain whether or not, under all of the existing cir-
cumstances disclosed by the evidence, the traveler acted as a
person of ordinary care and prudence would have acted, under
the same or similar circumstances. But where the situation is
such that all reasonable and fair-minded men would agree that
the traveler did not exercise such care and caution, then it is
the duty of the court, as a matter of law, to direct a verdict
against such party, because of contributory negligence. It is

also a very familiar rule that a traveler approaching a known dangerous railway crossing must look and listen for an approaching train, and must do all those acts and things which a man of ordinary care and prudence would do under such circumstances.

Applying these general rules to the instant case, we have a situation where the appellant approached a known dangerous railway crossing in broad daylight, on a clear day, driving an automobile at a rate of speed of approximately ten miles an hour, and having the same so under control that, according to his own testimony, he could have stopped it within a distance of ten feet.

The claim is made in behalf of the appellant that there was a diverting circumstance at the time, that absolved him from the duty of looking in such a manner as to have observed the approaching train, because of his meeting the tractor and drag upon the highway. It is contended that appellant saw the driver of the tractor coming from the north, and that the latter gave no indication that he observed an approaching train coming from the southwest on the track. The driver of the tractor testified that he saw no train as he crossed the crossing, but there is no evidence that the appellant observed the driver of the tractor looking down the track in the direction from which the train approached, nor does the driver of the tractor testify that he looked at that point for an approaching train.

This was not such a diverting circumstance as relieved appellant of the duty of looking, for his own protection. Neither was there a sufficient diverting circumstance to excuse the appellant in the fact of the appellant's meeting and passing the tractor at a distance of from 35 to 40 feet south of the railroad track. He was driving slowly at the time, he turned but slightly from his course in order to pass the tractor, and he was still about 35 feet from the railway track when he had passed it.

The evidence establishes that, at a point approximately 50 feet south of the crossing, the track is clearly visible to the southwest for a distance of more than 900 feet. After the appellant had passed the tractor, and was within approximately 35 feet south of the track, he had a practically clear and unobstructed view to the southwest along the track for a distance

of more than 1,000 feet. At the rate at which the appellant was driving the car, he could have stopped it within a distance of 10 feet; and, if he had looked either just before he met the tractor or after he had passed it, to the southwest along the line of the railway track, he could not but have observed the approaching train. The appellant testified that, about the time he passed the tractor, and when about 30 or 40 feet south of the track, he looked to the *west,* and did not see any approaching train. Counsel for appellant lays stress upon this fact. Counsel says that a traveler approaching such a crossing at such a sharp angle would "instinctively and naturally look west,—that is, directly to his left,—and would not crane his neck out of the coupe window to take a direct southwest view." Right here lies counsel's misconception of the law applicable to a case of this kind. It is the duty of a traveler approaching a railway crossing to look in the direction from which a train may approach. If, as in the instant case, he is driving on a highway that is, to an extent, parallel with the railway track, and crossing it at a sharp angle, it is his duty, if need be, to "crane his neck" in such a manner as to observe whether or not a train is approaching upon the track which he is about to cross. If the angle of the crossing is very acute, it may be necessary for the driver to practically look in the opposite direction from that in which he is going, in order to inform himself as to whether a train is approaching from that direction. It is not enough for him to look at the adjacent track at right angles from his seat, but he must look along the line of the track in the direction in which a train may be approaching, to apprise himself as to whether or not he can attempt to make the crossing in safety. The facts surrounding the location of this crossing are such that, had the appellant, when within 30 or 40 feet of the track, looked in the direction from which a train might come on the appellee's track,—to wit, to the southwest,—he could, from that point, have seen for a distance down the track of approximately 1,000 feet, and if he had done so, he was bound to have seen the approaching train. One of two conclusions seems to be inevitable: either that the appellant merely looked to the *west,* as he testified, and not to the southwest down the track, or that he saw the approaching train and endeavored to effectuate the

crossing ahead of ,it. It is needless for us to cite the authorities holding that, under circumstances of this kind, the court was justified in finding that the appellant was guilty of contributory negligence as a matter of law, and in directing the jury to return a verdict for the appellee, upon that ground. Each case must be determined according to its own peculiar facts. The authorities have been recently reviewed by us in a number of cases.

The court did not err in directing a verdict for the appellee, on the ground of the contributory negligence of the appellant.

III. Appellant filed a petition in one count, separated into six different paragraphs. Paragraph 6 was as follows:

"Plaintiff does further state and show that, at the time of said collision, he had certain valuable merchandise in his said automobile, as follows: [particularly describing the several items]; that the total value of said items was of the reasonable market value of $1,003.60; that, as a result of said collision, a number of said items were demolished, scattered, lost, and broken; that, immediately following said collision, defendant took possession of said automobile and said merchandise and parts, and did refuse to deliver or surrender same up to plaintiff; that defendants have since said time, to wit, on August 6, 1920, delivered to plaintiff a part only of said merchandise, or personal property, as follows: [describing same]; that the reasonable market value of said items returned to plaintiff was $445.72,—thus showing loss of merchandise sustained by plaintiff from said cause above set out in the amount of $557.88."

*3. APPEAL AND ERROR: presentation to lower court: estoppel.*

Appellant offered evidence to support the allegations of this paragraph of his petition, and there was some testimony tending to show that, immediately after the accident, the employees of the appellee took possession of the wrecked car and the property that had been scattered therefrom by the collision, and stated to the son of the appellant that they would have to retain it until after the claim agent of the company had made an examination. Some of it was never returned.

No motion was filed by the appellee to require the appellant to separate and divide the allegations of Paragraph 6 from

the remainder of the petition. At no time in the lower court was it suggested by anyone that this paragraph of the petition pleaded a distinct cause of action, based on conversion. The motion for a directed verdict was predicated on the ground of contributory negligence on the part of the appellant, and was sustained on that ground. No motion for a new trial was filed. Appellant now contends that Paragraph 6 of the petition pleaded a cause of action in conversion, and that, even though he was guilty of contributory negligence, he had a right to go to the jury on the question of damages by reason of the alleged conversion of property.

The trial court and the counsel for appellee may well be pardoned for failing to discover, upon reading the petition of appellant, that there was an attempt, as now claimed, to plead two causes of action: one growing out of damages by reason of the injury, and the other for conversion, under the allegations of Paragraph 6. It will be noticed that in said paragraph it is alleged "that, as a result of said collision, a number of said items were demolished, scattered, lost, and broken." It is alleged that a portion of the property was returned to the appellant. It is also alleged that the "loss of merchandise sustained by the plaintiff from *said cause* above set out" is in the amount specified. The only statement in this paragraph that could be construed to be an allegation in conversion is the one sentence: "That, immediately following said collision, defendant took possession of said automobile wreckage and said merchandise and parts, and did refuse to deliver or surrender same up to plaintiff." This, however, is in direct connection with and immediately follows the allegations that, "as a result of said collision, a number of said items were demolished, scattered, lost, and broken."

Reading the entire paragraph in its connection with the remaining portion of the petition, we are of the opinion that it fails to state a separate and independent cause of action, based on conversion. There is no allegation that the appellant owned said property; that he made any demand therefor; or that the appellee had, in fact, converted it to its own use. On the face of it, it was an apparent attempt to plead damage to property that was "demolished, scattered, lost, and broken."

The contention now first made in this court, that this paragraph of the petition pleaded a separate and distinct cause of action in conversion, and that appellant was entitled to go to the jury upon that question, is evidently an afterthought. It was not suggested to the trial court, in the submission of the motion for directed verdict, that the pleading was capable of any such construction, nor was it presented by a motion for a new trial, or in any other manner called to the attention of the trial court. Code Section 4105 provides:

"A judgment or order shall not be reversed for an error which can be corrected on motion in an inferior court, until such motion has been there made and overruled."

The paragraph in question was not sufficient as a pleading of a separate and distinct cause of action in conversion; and even if it were such, the appellant is now in no position to urge for the first time in this court that the trial court erred in failing to discover that a claim of conversion was within the allegations of Paragraph 6 of the petition, without having brought said matter in some way to the attention of said court. We cannot reverse, in such a situation.

The judgment of the district court is, therefore,—*Affirmed.*

STEVENS, C. J., EVANS and ARTHUR, JJ., concur.