J. F. ALBRIGHT, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC
RAILWAY COMPANY, Appellee.

**RAILROADS:** Accidents at Crossings—Negligence Per Se. A traveler
1  is guilty of contributory negligence *per se* in going upon an open
and visible railway crossing with a heavily loaded truck when he
is familiar with the crossing, when the day is clear, when his senses
of sight and hearing are unimpaired, when he knew that a train
was due at the crossing, when the topography was such that he
would have seen the train if he had looked, and when there are no
diverting circumstances. (See Book of Anno., Vol. 1, Sec. 8018,
Anno. 33 *et seq.*)

**NEGLIGENCE:** Acts Constituting—"Last Clear Chance." The doc-
2  trine of "last clear chance" can have no possible application when
the danger of the injured person was discovered at a time when
manifestly nothing could be done to prevent the injury.

Headnote 1:  33 Cyc. p. 1117.  Headnote 2:  33 Cyc. p. 856.

*Appeal from Davis District Court.*—W. M. WALKER, Judge.

OCTOBER 20, 1925.

ACTION to recover for damages to property and for personal injuries occasioned by a collision between a truck driven by the plaintiff and a train operated by the defendant.  At the close of all the testimony, the court directed a verdict in behalf of the defendant, and the plaintiff appeals.—*Affirmed.*

*H. C. & H. C. Taylor* and *Buell McCash,* for appellant.

*Payne & Goodson, J. G. Gamble,* and *R. N. Lynch,* for appellee.

FAVILLE, C. J.—I.  Appellee operates a line of railway which extends in a general easterly and westerly direction through the town of Drakesville in Davis County, and east-

1. RAILROADS: accidents at crossings: negligence *per se.*

ward therefrom.  The right of way of appellee is crossed at practically right angles by a highway extending north and south at a point about a mile east of Drakesville.  The collision in question occurred between four and five o'clock on the afternoon of the 5th of September, 1922.  It was a clear day.  The right of way of appellee is the usual width of 100 feet, being 50 feet on each side of the center of the track.  To the north of the right of way and west of the highway was a cornfield, which came to the right-of-way fence.  The right of way had been mowed in the month of August, and was free from weeds, brush, and other obstructions at or about the crossing.  There was a semaphore on the north side of the track, 164 feet west of the right of way, and 995 feet west from the crossing was a semaphore on the south side of the track.  The train which caused the collision in question was moving eastward.  There is a curve on the track, so that a train coming from Drakesville moves in somewhat of a northeasterly direction until it is near the semaphores referred to, and then passes on what is called a "tangent" toward the east.  The re-

sult is that an engineer, whose seat is upon the right side of the cab, is prevented from seeing the north approach to the highway crossing while the train is upon the curve. At the time of the collision, appellant was driving a Ford truck, loaded with goods, and was moving south on the highway in question. He was familiar with the railroad crossing, and knew that he was approaching it, and testified that he had in mind that a passenger train was due at about that time. It appears from the evidence in his behalf that appellant approached the railroad crossing at a speed of about twelve miles an hour.

The court having directed a verdict for appellee, we must consider the evidence in the light most favorable to appellant. It is his contention that, when he got to approximately the north line of the right of way, he brought the truck practically to a stop, and that he looked at that time in a westerly direction toward Drakesville, and neither saw nor heard an approaching train. He contends that he then looked toward the east, and, seeing no train from that direction, started his car slowly toward the railroad track. The highway is upgrade from a point near the line of the right of way toward the track, and appellant contends that he moved up this grade at a speed of about five miles an hour; that he had fifteen to sixteen hundred pounds on his truck, which was a one-ton truck, and that he thought he could have stopped his car, while negotiating the movement across the track, in a distance of about three feet. The forward part of the truck passed over the track, and the rear end of the truck was struck by the engine. Appellant contends that he neither saw nor heard the train until the engine was directly upon him.

The train was composed of fifty cars, and had a total length of about 2,000 feet. It was being hauled by a powerful engine, and the evidence of some of the witnesses for appellant is to the effect that the train was moving from fifty to fifty-five miles an hour. There is evidence tending to show that appellee was guilty of negligence in failing to give the statutory signals as the train approached the crossing in question.

Appellant testified that his sight and hearing were good. Appellant's line of vision, while seated in the truck, was about

five feet above the highway.   There were no obstructions on the track that interfered with his view.

The following photograph, taken on the north side of the track near the line of the right of way, at about the time of the accident, shows, in a general way, the view of the track over which the train approached the crossing.   The telegraph poles along the track are placed about 150 feet apart.

Giving to the testimony of appellant the most favorable construction that can fairly be placed upon it, we think it must be held, as a·matter of law, that appellant was guilty of contributory negligence in driving his truck upon the track in front of the approaching train.   The physical facts are such that, if appellant had looked at a point near the north line of the right of way, as he claimed he did, he must have seen the approaching train coming from the west in time to have avoided the collision by the exercise of proper and ordinary care.   It is true that appellant was not required to look at a particular point as he approached the railroad crossing.   The duty resting upon him was to use ordinary and reasonable care commensurate with the circumstances surrounding him at the time.   This was not an obscured or hidden crossing.   Appellant was familiar with it and the conditions surrounding it.   The physical facts are such that the court was justified in holding that, as a matter of law, if appellant had exercised that degree of care which an ordinarily reasonable and prudent man would have exercised under the circumstances, in view of the physical facts of the situation, he would have seen, and was bound to see, the approaching train in time to have stopped the slowly moving vehicle he was driving, and to have averted the collision.

The rules of law governing cases of this kind are well established by the oft-repeated decisions of this court.   Applying those rules to the facts of this case, and viewing them in the light most favorable to appellant, we are of the opinion that the trial court did not err in directing a verdict for appellee on the ground that appellant was guilty of contributory negligence.

II.   Appellant contends that he was entitled to go to the jury on the theory of the so-called "last clear chance."   Appellant's contention in this regard is based upon the testimony of

2. NEGLIGENCE: acts constituting: "last clear chance." the fireman who was upon the engine at the time of the accident. The fireman was seated on the left, or north, side of the engine as the train approached the highway crossing. He says that he saw appellant's car when the train was about 300 feet from the crossing. He testified that, when the car got to within fifteen or twenty feet of the track, he saw the driver of the car turn his head and look, and then the car shot in front of the engine. Appellant's contention is that the case should have gone to the jury on the theory that the fireman, having seen appellant when the train was 300 feet from the crossing, should have applied the brakes and sounded the whistle on the engine, to have averted the collision. The fireman testified that it is a customary and usual thing for the drivers of automobiles at railway crossings to drive inside the right of way close to the approaching train, and then stop the car and wait until the train goes past. Common observation and knowledge seem to verify the testimony of the fireman in this regard. The engineer has charge of the brakes and controls the operation of the train. As before stated, the engineer was not in a position where he could see appellant as he approached the crossing, because of the curve in the track which obstructed his view. It would obviously have been quite an impossible undertaking for the fireman to have communicated to the engineer that appellant was approaching the crossing 300 feet away, in time for the engineer or the fireman, by the reasonable use of the facilities at his command, to have in any way avoided the threatened collision. The situation, under the record, does not call for any application of the last clear chance doctrine, and the court did not err in not submitting the case to the jury.

We have examined the entire record, and are satisfied therefrom that the trial court did not err in directing a verdict in behalf of appellee; and the judgment appealed from must be, and it is,—*Affirmed.*

EVANS, STEVENS, and ALBERT, JJ., concur.