LESTER G. SODEMANN, Appellee, v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Appellant.

No. 41333.

828

OCTOBER 25, 1932.

REHEARING DENIED FEBRUARY 14, 1933.

Holleran & Holleran and Hughes, O'Brien & Faville, for appellant.

L. P. Molloy and E. C. Halbach, for appellee.

EVANS, J.—The accident under consideration occurred about 10 o'clock on the night of July 19, 1930, on Main street in the City of Lyons. On the evening in question the plaintiff and a young lady companion were riding for pleasure in the automobile of the plaintiff. Main street extends east and west and is a part of the Lincoln Highway. The railway of the defendant-Company extends north and south in this part of the city. The train schedule of the defendant included a passenger train arriving from the north in the city of Lyons at about 10 P. M. At about that time the plaintiff and his companion were traveling east on Main street. This street was traversed by the defendant's railway. At a point four blocks west from the railroad crossing, the plaintiff and his companion heard the whistle of the approaching passenger train and commented thereon in their conversation. The plaintiff was a long-time resident of the city and was familiar with the locality and with the train time. From the point at which he heard the train whistle, he drove east across the railroad tracks and one block further. This brought him to the bridge across the Mississippi River. At this point he turned back on the same street and drove west along its north side and proceeded to cross the railroad track a second time. At this intersection there were three railroad tracks side by side, twelve or thirteen feet apart. Of these three tracks the westerly one was that of defendant.

At a distance approximating forty to forty-eight feet east from the railroad tracks, a complete and unobstructed view of the railroad tracks to the north was available. At this point a view of the tracks could be had for several hundred feet. The plaintiff testified that at this point while going west he looked up the track for the train and saw none. He thereupon proceeded to the crossing and without seeing the approaching train at any moment he drove in front of the locomotive at the very instant of its arrival at the same spot. His first knowledge of the presence of the locomotive was obtained by the crash of the collision. The train was in fact in plain view at the time the plaintiff looked for it in the first instance and was in plain view at the very moment that the plaintiff drove upon the track. · The locomotive carried the regular headlight and an automatic bell; the street was lighted by four large electroliers; the cars of the train were all lighted. The first contention presented to us by the appellant is that the plaintiff was guilty of contributory negligence, and we give the question our first consideration.

The explanation given by the plaintiff, as a witness, for his failure to see the train and its headlight when he looked in the first instance was that the visor of his automobile was so placed that it interfered with his vision. His claim is that the visor of his car obstructed his view so that at a distance of fifty feet he could see nothing at an elevation greater· than ten feet. He testified in effect that when he looked for the train in the first instance, he could see as far as Pearl Street, one block north; that if the locomotive had been at Pearl Street at that time he could have seen its headlight; that if the locomotive was closer to him than Pearl Street, then he could not see its headlight because his line of vision would be lower than the elevation of the headlight. In other words he testified that he could not see a locomotive headlight if the locomotive were closer to him than the distance of one block. Such is his answer to his failure to see. The question naturally arises, of what avail was it to require him to look for the train before passing upon its tracks, if the train became invisible when it approached within two hundred feet of him. There is one infirmity in this recital of fact. His visor obstructed his view only to the west. In looking for the train he must look to the north. Both his windows were open. In any event we think the purported excuse is not available. Where there is a duty to *look*, there is a duty to *see* what is plainly visible. The looking may not be done with closed eyes. If the visor acted

as a drooping eye-lid for the car, it was no more permissible than a closed eye-lid would be for the plaintiff himself. According to the explanation made, the plaintiff knew when he looked that he had no vision of the locomotive or its headlight for the space of one block nearest to him. The very proximity of the train became plaintiff's excuse for not seeing it. Legal duty may not be thus evaded or excused. At the very time the plaintiff purported to look, the locomotive was less than one hundred feet distant from him. The plaintiff testified that he proceeded from that point toward the crossing at ten miles per hour. His witness testified that the train was approaching the crossing at from ten to fifteen miles an hour. The locomotive was in the plain view of plaintiff's witnesses, who estimated its speed. The plaintiff had his car in good control and could have stopped in a moment. At the instant that plaintiff entered upon the rails, the locomotive was so close to him that he could have touched it with an ox-goad, yet he neither saw it nor heard it until the crash of the contact awakened him.

█ Inasmuch as he failed either to see what was plainly visible or to hear what was clearly audible, he is deemed under the "physical evidence" rule not to have looked or listened at all.

Furthermore his negligence was greatly emphasized by the fact that he and his companion had heard the whistle of the train in its approach to the crossing while he was traveling easterly toward such crossing the first time. In the time elapsing before the collision, he traveled six blocks. During all that time he knew that the train would reach the crossing very soon.

We see no escape for the plaintiff from the charge of contributory negligence. Beemer v. C. R. I. & P. R. Co., 181 Iowa 642; Yetter v. C. R. & M. C. R. Co., 182 Iowa 1241; Anderson v. Dickinson, 187 Iowa 572; Sackett v. C. G. W. R. Co., 187 Iowa 994; Swearingen v. U. S. Rd. Adm., 191 Iowa 1096; Ballard v. C. R. I. & P. R. Co., 193 Iowa 672. The motion of the defendant for a directed verdict on the ground of contributory negligence, should have been sustained.

The judgment below is accordingly—Reversed.

STEVENS, C. J., and DE GRAFF, ALBERT, KINDIG, WAGNER, and BLISS, JJ., concur.

FAVILLE and CLAUSSEN, JJ., take no part.