PAUL CASHMAN, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellee.

No. 41872.

SEPTEMBER 26, 1933.

REHEARING DENIED JANUARY 12, 1934.

Herminghausen & Herminghausen, for appellant.

Johnson, Martin & Johnson and J. C. Pryor, for appellee.

CLAUSSEN, J.— In the forenoon of October 22, 1930, appellant was driving an automobile in a southerly direction on Eighteenth street, in the city of Fort Madison, across the tracks of appellee, railroad company. A collision took place between the engine of an eastbound train and the automobile, as a result of which appellant was very seriously injured. This action was brought to recover damages to person and property caused by the collision. Upon the trial of the case, a motion for a directed verdict, made by appellee at the close of all the evidence upon the ground, among others, that appellant was guilty of contributory negligence, was sustained, and from such action on the part of the court, as well as other rulings, this appeal is taken.

An accurate conception of the nature of the crossing, on which the unfortunate accident happened, is essential to the disposition of this case. It appears that the tracks of appellee in the vicinity of the accident are on "N" avenue, an east and west street. Photographs indicate that the avenue is not generally used for ordinary street traffic, for it seems to be grown up with weeds and grass. "N" avenue is intersected at right angles by Eighteenth street, which is a paved street that carries a great deal of traffic. On the northwest corner of the intersection is a retail coal establishment. The office building is on the southeast corner of the property and in very close proximity to the east and south property lines. The office building and bins stretch continuously westward for a considerable distance. The character of these erections is of no consequence because appellant began the short journey, ending in the accident, from a point on the street in front of the office. To the south of the office is a platform scale, the beam of which is in the office building, in consequence of which the scales were not an obstruction to view. So far as permanent obstructions are concerned, an unobstructed view of the tracks to the west could be had, by one approaching from the north, upon reaching a point in Eight-

eenth street, a few feet north of the north line of "N" avenue. The other corners of the intersection were not occupied by structures of any kind. The crossing was guarded by a wigwag signal and bell, erected a short distance—not over 2 feet—west of the west curb line of the street and in line with the property line on the north side of the avenue. The wigwag post was situated about 25 feet east and a few feet south of the door of the office and 30 feet north of the main track. The wigwag was operated on a circuit which extended some 2,000 feet west of Eighteenth street. The tracks consist of one main line track and one side track. The main line track is very nearly in the center of the avenue, while the side track is to the north of the main track. The tracks are straight for over a block on each side of the street on which the accident occurred, and there is nothing in the record from which it can be ascertained how much further the tracks continue in a straight line. The distance from the southeast corner of the office to the north rail of the north track was 21½ feet. From the south rail of the side track to the north rail of the main track was 8 feet 10 inches. By the process of addition it is disclosed that the distance between the office and the north rail of the main track was 35 feet.

On the morning of the accident, a coal car was standing on the side track about 85 feet west of the street. From the description given we gather that the car was somewhat higher than the open cars in which coal in usually transported. Between the coal office and the side track, and in the space between the coal bins and the side track, on the morning of the accident, there were standing an automobile and a coal truck. The exact location of these obstacles is not shown, but there is no question but what they very materially interfered with a view of the tracks to the west, by one who was on the street. The view of the tracks to the west, had by one approaching the tracks from the north, would be confined to such vistas as might be open between such obstacles to observation. At this time it may be well to notice that appellant does not claim that he looked to the west until he reached the side track, and of course the things standing on the space north of the side track would no longer be an obstruction to his view of the tracks.

Appellant had been employed sporadically by the owner of the coal yard and was familiar with the crossing. On the morning of the accident he went to the coal yard to find out if there was work for him. He drove to the coal yard in his car, which he parked

about 40 feet north of the office on the west side of the street. Upon ascertaining that there was no work available, he entered his car and drove it slowly toward the tracks. When he entered his car he was about 40 feet from the wigwag. He says he looked at it and that it was quiet and that the bell was not ringing. As he proceeded toward the tracks, he first looked in an easterly direction. He then looked westward. He testified that he looked to the west when he was at the north rail of the side track. From this point he says he could see up the tracks a distance of from 140 to 160 feet. The thing that cut off a longer view was, of course, the coal car which was 85 feet away. In his estimate of distances he is certainly mistaken, for the application of simple mathematical principles to the undisputed facts prove that if the coal car was 85 feet from him at the time he looked to the west, from a point on the north rail of the side track, he could see an on-coming train on the main track at a much greater distance than 160 feet. The tracks are parallel. The space between the two sets of tracks is 10 feet 8 inches. The coal car would have to extend 5 feet 4 inches south of the south rail of the side track in order that its southeast corner might be in the line of light from the point of observation to a point on the south rail of the main track, 170 feet west of the point of observation. To have this obstructing effect, the coal car would have to be over 15 feet wide. It is a matter of common knowledge that railroad equipment seldom exceeds 10 feet in width over all, which means that cars seldom overhang the rails by more than 2 feet 8 inches. The difference between such overhang and the assumed overhang of 5 feet 4 inches means that the length of vision is much greater than 170 feet. In fact, the distance is approximately 230 feet. At the time appellant looked to the west he said he was traveling 5 or 6 miles per hour. He increased his speed at that time and said that by the time he reached the main line track he was going 9 miles per hour. The highest rate of speed assigned to the train by any witness was 40 miles per hour. If it be assumed for the sake of discussion that appellant was traveling at the slowest speed assigned to his car, namely 5 miles per hour, and that the train was traveling at the highest rate, to wit, 40 miles per hour, the train was traveling eight times as fast as the car. From the north rail of the side track to the north rail of the main track was 15 feet 4 inches. While appellant was traveling the 15 feet 4 inches, the train would travel 122 feet 8 inches. As a matter of fact, if every pos-

sible advantage is given to appellant of doubts in his figures, the train was in plain sight when he looked, and this is true whether we consider that his field of vision extended westward 230 feet or assume that in some manner it was limited to the lowest estimate made by him, 140 feet.

Without ascribing any new significance to the facts, it is to be remembered that appellant was thoroughly familiar with the crossing and that there were no diverting or distracting circumstances.

Concerning the duty of a traveler on the highway to look for approaching trains at some point where he can see, before going upon a crossing our cases leave no doubt, and the law invariably charges the traveler with the duty of observing the train if it is in sight when he looks. He rests under an obligation to see the thing for which he looks, if it is in plain sight. An engine cannot leave the rails for the purpose of concealing itself. In the case at bar, appellant had but a single and perfectly straight track to watch as he looked to the west. An approaching train was bound to be on this track. Under the circumstances surrounding appellant when he looked, the law required him to observe and give heed to the ponderous instrumentalities that constitute a train if they were before his eyes on the straight, single track. That the train was in sight is not the subject of any doubt.

We doubt whether the record discloses any negligence on the part of appellee in the operation of its train, but if it be assumed that the negligence of appellee was ever so great, the uncontroverted facts make it clear that the accident would not have happened if appellant had exercised the care required of him as a matter of law. Appellant says that he never saw the thing that struck him. He says that at the rate he was driving he could have stopped his car almost instantly. All men must agree that when he looked the train that struck him must have been before his eyes, in plain sight, and that he drove into its path without heed for its presence or consequences to himself.

The action of the trial court in sustaining the motion for a directed verdict upon the ground that appellant was guilty of contributory negligence was right. The cases of this court upon the questions involved have been collected and reviewed in a number of recent decisions. We refer only to a few cases sustaining our conclusions in which the facts are strikingly similar. Tegtmeyer v. Byram, 204 Iowa 1169, 216 N. W. 613; Albright v. Chicago, R. I.

474

& P. R. Co., 200 Iowa 678, 205 N. W. 462; Bannister v. Ill. Cent. R. Co., 199 Iowa 657, 202 N. W. 766; Glessner v. Waterloo, C. F. & N. Ry. Co., 216 Iowa 850, 249 N. W. 138; Rosenberg v. Des Moines R. Co., 213 Iowa 152, 238 N. W. 703.

II. Appellant questions the power of the trial court to direct a verdict, asserting that such action is an invasion of the constitutional right to a trial by jury. This question has been before this court in the early case of Eddy v. Wilson, 1 G. Greene, 259, in which a similar contention was held to be without merit. We abide by our former holding on this question.

Appellant assigned errors in the admission and exclusion of evidence and in other respects. In view of the fact that the condition of the record on the matter of appellant's contributory negligence makes an affirmance of the judgment of the trial court mandatory, it is not necessary to notice such errors.

The judgment of the trial court is affirmed.

ALBERT, C. J., and EVANS, KINDIG, and DONEGAN, JJ., concur.