EDNA RUSSELL, Administratrix, Appellee, v. HENRY A. SCANDRETT et al., Trustees, Appellants.

No. 44395.

1130

October 25, 1938.

Rehearing Denied February 10, 1939.

Shull & Stilwill, Hughes, O'Brien & Hughes, John N. Hughes, Willis J. O'Brien, and John N. Hughes, Jr., for appellants.

Jepson, Hatfield & Jepson, for appellee.

Stiger, J.—On January 20, 1936, about 8 o'clock in the morning, Raymond Howie and George Allen Russell, plaintiff's

intestate, left the town of Merrill, Iowa, in a truck operated by Howie intending to go to Meckling, South Dakota, to get some alfalfa for their employer. They reached Elkpoint, South Dakota, about 9:30 and continued on their journey traveling in a northwesterly direction on a highway which was parallel to and south of defendants' railroad track. About four miles west of Elkpoint the highway turns north, crossing the track at right angles, and then continues on the north side of the track and parallel to it. When all but the rear portion of the truck had cleared the track at the crossing, it was struck by a train which was going in a northwesterly direction and Mr. Russell died from the injuries received. The collision occurred about 10 o'clock in the morning. The railroad track runs west out of Elkpoint in a straight line to the crossing and parallel to the highway and from the crossing where the accident occurred there is an unobstructed view of the track to the east, from which direction the train was approaching, for two miles. The jury returned a verdict for the plaintiff. Plaintiff's intestate will be referred to as plaintiff.

One of the errors assigned by the defendants is that the court erred in refusing to direct a verdict for the defendants on the ground that the evidence conclusively shows that plaintiff's decedent was contributorily negligent as a matter of law in failing to discover the approach of the train in time to warn the driver of the truck before the truck was driven upon the crossing because the train was in plain view when the decedent looked down the track; that if he looked down the track in the direction from which the train was approaching as he was required by law to do, he either saw the train or could have seen the train, and in either event was contributorily negligent, as a matter of law, in directing, permitting, or allowing the truck to be driven upon the railroad crossing.

In approaching a railroad crossing it is the duty of a traveler on the highway to look for trains, and to see a train if it is in plain sight, and if he goes upon a crossing in front of a train which was in plain view as he approached the crossing he is guilty of contributory negligence as a matter of law. Meier v. C. R. I. & P. Ry. Co., 224 Iowa 295, 275 N. W. 139; Cashman v. C. B. & Q. Ry. Co., 217 Iowa 469, 250 N. W. 111; Albright v. C. R. I. & P. Ry. Co., 200 Iowa 678, 205 N. W. 462; Sohl v. C.

1132

R. I. & P. Ry. Co., 183 Iowa 616, 167 N. W. 529; Yanaway v. C. R. I. & P. Ry. Co., 195 Iowa 86, 190 N. W. 21.

While the view of the track from the crossing to the east was entirely unobstructed under ordinary conditions, plaintiff claims that because of atmospheric conditions and because of frost on the train, the view of the track and approaching train was materially obstructed which made the issue of plaintiff's contributory negligence for the jury.

The ground was covered with 8 or 10 inches of snow, the temperature at the time of the accident was six degrees below zero, the sky was cloudless, and the sun was one-half way to its zenith. Plaintiff contends that the view of the train was obstructed for the following reasons: First, that when the car was stopped 15 feet south of the track and the occupants looked east along the track under the above atmospheric and weather conditions the vision of a man with normal eyesight would be affected; second, that the engine and train was covered with frost and thus so camouflaged and blended with the surrounding white landscape that the view of the train was materially obstructed when plaintiff looked. Plaintiff relies on the testimony of Howie and Dr. Frederick Roost to establish the above propositions. We set out the following testimony given by Howie:

"When we left Sioux City, the sun was up and the light was clear and glistening frosty. The snow was between 8 and 10 inches deep. From Elkpoint we drove about three miles parallel with the railroad track and then turned at right angles to the crossing on the tracks. Russell was sitting on the right-hand side of the closed cab and I was on the left side. The windshield was clear. The rear glass of the cab was possibly slightly frosted. The right-hand glass of the door was clear. The truck was a 1934 model Reo semi-trailer and was in good mechanical condition. Three miles west of Elkpoint the road crosses the tracks and then parallels the tracks on the north. The road turns at a right angle. As I started to make the turn, I glanced out through the window, I already saw through the windshield and there was nothing coming straight ahead nor from the west. Russell was sitting on the right-hand side and was nearer the approaching train than I was. He was in a better position to see the train and I was depending on him to warn me of this train. Russell's eyesight was normal and his hearing was alright. I

asked Russell to open the door and look to the east to see there were no trains coming. The truck was stopped about 15 or 20 feet south of the tracks. On previous trips Russell and I took the same road and went over this same crossing. When I stopped the truck, and asked Mr. Russell to open the door and see if any trains were coming he opened the door and then said, 'go ahead'. Russell opened the door, I looked and seen nothing. Russell closed the door and said 'go ahead' and we proceeded to cross the tracks. The snow was level and around 8 or 10 inches deep. Nothing of the railroad showed except the tops of the rails. The railroad track is a little above the ground along there. I couldn't see the ties. *As I looked down along the railroad tracks all I saw was the clear glistening tops to the rails for about 400 or 500 yards. I did not see anything approaching on those tracks from the south east.* I shifted into low second and started crossing the tracks. The front end was crossing the tracks and possibly six or eight feet of the trailer was still on the tracks when I heard a whistle just scream and glanced and saw a cloud of smoke and crash and when I came to I was on the east side of the road north of the tracks. When the train whistled it seemed it screamed right at us just the second, you might say, that it hit. I never heard anything just prior to this whistle. I didn't hear a bell. When I stopped on the south side of the tracks the door was open and the sun was shining directly in the door of the cab. When I first saw the train when I came to it was backing up and was frosted in the rear and also what I could see of the coaches.''

"Q. What about the engine? A. You couldn't get a * * * you hadn't but a second to look at it at that time coming right down onto you, and it seemed as if it * * * I know the north side of it was covered with frost."

A hypothetical question was propounded to Dr. Roost which described the weather conditions above referred to. A portion of the question reads as follows:

"Q. Assuming as I say, that it was a bright sunshiny day, and assuming that the angle of the truck was such that the rays of the sun were coming right directly through the open space where the door was open and, as I say, that the position of the sun was in the southern part of the heavens, as it was on January 20th, 1936, I will ask you to state in your opinion what

effect, if any, the sunlight and other conditions which I have outlined here would have upon the vision of the driver of the truck and the man sitting on his right-hand side as they looked in a southeasterly direction for the train, along the track? A. Well, a sustained looking into the bright light reflected on snow or combined sun and snow often causes a momentary or temporary loss of vision.''

The witness further stated that the vision of a normal person would be *very frequently* affected to a greater or less extent under the conditions described in the question.

With reference to the train being camouflaged by frost, the witness stated:

''In camouflaging or making things invisible you, of course, judge the colors of the surrounding terrain, whether ground or trees or whatever it is. If the objects around are white I would paint it white.''

■ An employee of the United States Weather Bureau testified the humidity at 7 a. m. was 95% and at noon was 78%, and that if the humidity was 100% there would be precipitation in the form of rain or snow. There is no evidence that either Howie or the plaintiff looked for a *sustained* period into the bright light reflected on the snow or that either of them had a momentary loss of vision when they stopped the car and looked for the train. They had been driving in the bright light since 8 o'clock in the morning and it does not appear that their vision was affected by prevailing conditions during the journey to the crossing. When they looked to the east they did not look directly at the sun which was one-half way to its highest point in the sky. Howie does not claim that he was blinded by the sun or by the glare caused by the sun shining on the snow nor does he claim he suffered a momentary loss of vision, on the contrary, he states that he looked down along the railroad tracks and saw the tops of the rails for about 400 or 500 yards. If he could see the rails for a distance of 1500 feet he obviously could have seen a train at that distance. If, when Russell looked, he suffered a loss of vision, his looking was ineffectual and he would not have been exercising due care when he told Howie to ''go ahead''.

Plaintiff's theory that the sun shining on the snow and into the cab door constituted such an obstruction to the view of the

oncoming train that would engender a jury question on the issue of plaintiff's contributory negligence is not established by his evidence.

The other contention of plaintiff is that the engine and train were covered with frost to such an extent that they blended with the white right of way and surrounding country to a degree that materially affected the visibility of the train. Howie testified that the rear of the train and what he could see of the coaches were frosted and that the north side of the engine was covered with frost. Dr. Roost testified with reference to the art of camouflage that "if the objects around are white I would paint it white."

Because of its ponderous size a train stands out in bold relief, especially on a cloudless day.

The humidity caused little frost on the truck. Howie testified: "The windshield was clear. The rear glass of the cab was possibly slightly frosted. The glass of the right-hand side of the cab was almost clear. The glass on the left-hand side was also almost clear."

Taking the view of the evidence most favorable to the plaintiff, we are of the opinion that his testimony does not show that the train was frosted to an extent that would materially affect its visibility. The fact that certain parts of the train may have been frosted in some degree, does not establish that the train was so camouflaged with frost that its visibility was materially affected. The extent of the frost on the coaches is not shown and there is no evidence that the part of the train that plaintiff could have seen from the place where the truck stopped on the south side of the track, that is, the front of the engine and the south side of the train, was frosted.

We reproduce Exhibit "1", which is a photograph taken the day after the accident from a point 30 feet west of the crossing with the camera between the rails, and shows the view east of the crossing. This picture shows the unobstructed view east of the crossing and that there were many objects along the right of way and in the adjacent fields such as weeds, trees, and corn stalks or other growths in the fields that were not covered with snow. The surrounding landscape was not an unrelieved, glittering white expanse of snow as pictured by the plaintiff in his argument.

The plaintiff cites Alitz v. M. & St. L. R. Co., 196 Iowa 437, 193 N. W. 423; Upton v. Hines, 193 Iowa 385, 185 N. W. 561; Harper v. Barnard, 99 Iowa 159, 68 N. W. 599; Meyer v. C. R. I. & P. R. Co., 134 Iowa 722, 112 N. W. 194, and other cases. In these cases the view of the track and train was materially obstructed by unfavorable conditions such as fog, falling snow, smoke from other trains, steam, and physical structures as standing freight cars and buildings, and the court applied the familiar rule that if the view of the railroad is obstructed by any means so as to render it impossible or difficult to learn of the approach of a train the question of plaintiff's negligence is for the jury.

The record in this case does not show that there was a material obstruction to the plaintiff's view.

In the case of Landis v. Interurban R. R. Co., 166 Iowa 20, 147 N. W. 318, the court states [page 31 of 166 Iowa, page 324 of 147 N. W.]:

"It is well settled that, if one drives upon a railway crossing, which is a known place of danger, in front of an approaching train, the view of which is substantially unobstructed, without looking and listening, or if he looks and listens, and does not see a car which he should have seen, had he exercised reasonable care to see, or to hear, but says that he neither saw nor heard, he is guilty of contributory negligence as a matter of law."

In the case of Sohl v. Chicago, R. I. & P. R. Co., 183 Iowa 616, 167 N. W. 529, Justice Ladd, speaking for the court, states [page 620 of 183 Iowa, page 530 of 167 N. W.]:

"* * * if he looked, [he] must have seen the approaching train. The railroad crossing was a place of danger, and he was bound to look and listen before going upon the track. Had he done so, he must have seen the approaching train; and whether he looked or failed so to do, he was equally negligent in driving in front of the rapidly approaching train, which was in plain sight."

From the time plaintiff looked, from a distance of 15 or 20 feet from the crossing, the train, going at 50 miles an hour, traveled its distance to the crossing while Howie drove the truck in second gear on to the crossing, a distance of approximately 30 feet. There can be no doubt but that the train was in plain sight and the circumstances are such that if plaintiff had looked

1138

he could have seen the train and if he did not see the train he looked negligently. The plaintiff was guilty of contributory negligence as a matter of law and the court erred in overruling defendants' motion for a directed verdict.—Reversed.

HAMILTON, KINTZINGER, MILLER, and DONEGAN, JJ., concur.