LEMKE v. CHICAGO, R. I. & P. R. CO.
No. 14439.

United States Court of Appeals
Eighth Circuit.
April 17, 1952.

John H. Mitchell, Fort Dodge, Iowa (Arthur W. Smith, Emmetsburg, Iowa, on the brief), for appellant.

A. B. Howland, Des Moines, Iowa (R. L. Read and B. A. Webster, Jr., Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment in favor of Chicago, Rock Island and Pacific Railroad Company, appellee herein, entered on a directed verdict in favor of appellee at the close of all the testimony in an action brought by appellant against appellee to recover damages for personal injuries received by him and for damage to property. We shall refer to the parties as they appeared in the trial court.

The damages for which plaintiff sought to recover resulted from a collision between an automobile owned and driven by him and a train of defendant standing on a highway crossing. Plaintiff was driving his 1947 Kaiser automobile south on Highway No. 44, which extended north and south on the east edge of the Town of West Bend, Iowa, at approximately 11:00 o'clock p. m., on October 26, 1948, when his automobile crashed into the side of defendant's train which was then standing across the highway. Highway No. 44 is straight for several miles on each side of the railroad crossing. To the north of the crossing the highway is black top and has an upgrade as it approaches the crossing of approximately two feet per hundred, while to the south of the crossing the road is graveled and substantially level. The highway forms the east boundary of the town of West Bend and there are a few houses to the north of the crossing. The highway is lighted by one street light about 300 feet north of the crossing and by lights south of the crossing, including one 100 feet south of the crossing at the westerly side of the

highway. The speed limit on this highway, approaching the crossing from the north, was forty-five miles an hour, and this limit was posted on a sign approximately one-half mile north of the crossing. The crossing consisted of two railroad tracks traversing the highway in a northwesterly-southeasterly direction.

The night of the collision was dark, but clear with no fog or clouds. There was no whistle of the train at the time plaintiff approached the crossing. He heard no bell ringing and he saw no warning lights nor signal at the north side of the crossing, but there was a cross-arm sign about ten feet in height on the left side of the highway near the rails as one approached the crossing going south. A freight train consisting of thirty cars and a locomotive was standing on this track. The seventh car from the locomotive stood across the highway on this crossing. The train was facing west and the locomotive was standing at the water tank. This train had just arrived and stopped for the purpose of taking water. As it arrived the engineer whistled as he approached the crossing. When the train stopped the head brakeman placed a burning fusee on the highway to the south of the crossing and was in the act of crossing over between the cars to the north side of the train for the purpose of placing a fusee in the road to the north of the crossing when plaintiff's car crashed into the train. There was evidence that when the collision occurred the engine bell was ringing, but plaintiff did not hear it.

Some twenty minutes before the collision plaintiff had driven north on this same highway and over the crossing and was aware of the fact that a railroad crossing was there and that he would have to cross it as he returned from the north. Earlier in the day he had driven on this highway No. 44 from the north to his brother's, south of West Bend, but he says he did not at that time go over this crossing, but he manifestly went over another crossing, approaching it from the north, but just where that crossing was located does not appear from the record.

Plaintiff's car was equipped with hydraulic four-wheel brakes, which he testified were in perfect condition. The lights on his car were standard, sealed beam headlights, with a high and low beam. It had a new motor and the lights were on high beam as he approached the crossing. Other facts will be developed in the course of this opinion. The court directed a verdict for the defendant on the sole ground of plaintiff's contributory negligence.

The court having directed a verdict in favor of defendant we must view the evidence in a light most favorable to the plaintiff, and if, when so considered, fair-minded men might reasonably reach different conclusions as to the material facts then the issue should not be determined as a matter of law but should be submitted to the jury for determination.

This is a diversity of citizenship case and hence is governed by the law of the State of Iowa. Under the Iowa law plaintiff in a personal injury action is required affirmatively to establish his own freedom from negligence. Kinney v. Larsen, 239 Iowa 494, 31 N.W.2d 635; Scherer v. Scandrett, 235 Iowa 229, 16 N.W.2d 329; Hitchcock v. Iowa Southern Utilities Co., 233 Iowa 301, 6 N.W.2d 29. As has been observed, the trial court did not pass upon the question of whether or not the defendant was negligent in any of the respects charged by the pleadings but assumed without deciding that the evidence on that question was such as to make it one of fact for the jury.

It appears from the undisputed evidence that plaintiff was familiar with this crossing; in fact, he had passed over it about twenty minutes before the accident and he had passed over some other crossing from the north in the Town of West Bend earlier in the day, so that he was cognizant of the location of the railroad and of this particular crossing. The Supreme Court of Iowa has in effect held that it is always train time at a railroad crossing and it should be expected that a train might be passing over a known crossing. High v. Waterloo, C. F. & N. Ry. Co., 195 Iowa 304, 190 N.W. 331; Hitchcock v. Iowa Southern Utilities Co., supra. A railroad crossing is in itself a warning of danger if it is visible or its location known, making it incumbent

upon the traveler to discover the presence or approach of a train and to avoid danger by making full use of his senses and by taking all reasonable precautions. An automobile driver who collides with a standing train on a well-lighted crossing, or a crossing with which he is familiar, who could have seen the standing train in time to stop before colliding with it, but fails to do so, or who is driving at such speed that his automobile cannot be stopped within the distance covered by the headlights, or who drives with insufficient lights, is guilty of contributory negligence.

■ In the instant case plaintiff approached this crossing on a dark night at a speed of forty-five miles an hour and with lights which allowed him to see objects on the highway for a distance of not more than 100 feet. He testified that at the speed he was traveling it would take from 180 to 250 feet to bring the car to a stop. Section 321.410, Code of Iowa 1950, I.C.A. which sets forth the requirements for lights on motor vehicles, provides in part as follows: "There shall be an uppermost distribution of light, or composite beam, so aimed and of such intensity as to reveal persons and vehicles at a distance of at least three hundred fifty feet ahead for all conditions of loading." Plaintiff testified that his lights were on high beam but they did not show the presence of this train until he was within 100 feet of the crossing. From this it would seem to follow either that the lights were insufficient or that plaintiff was not looking ahead although he knew he was approaching this railroad crossing, in either of which event he was guilty of contributory negligence unless, as argued by counsel for plaintiff, the rule in Iowa has been so modified by the decision of the Supreme Court of Iowa in Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120, as to make the question of contributory negligence invariably a question for determination by the jury. It is therefore necessary to consider that decision. This same argument was made before the trial judge in resisting motion for a directed verdict. Answering the argument that this decision had changed the law of Iowa on the question of con-

tributory negligence the trial court, among other things, said: "I have checked the Iowa cases and I have not been able to find a single Iowa case where a driver who has driven into the side of a standing train has been allowed to recover. I am convinced * * * it is still the rule in Iowa, which the Lindquist case did not change, that if the plaintiff driver runs into a standing train he is not helped by the Lindquist case on the burden of contributory negligence."

In the Lindquist case a passenger brought suit to recover damages for personal injuries resulting from a collision between the car in which she was riding as a passenger and a standing train. The Supreme Court of Iowa had no occasion to consider the question of contributory negligence but did consider the question of proximate cause. It held that under the evidence in that case that question was one of fact for determination by the jury. There is no discussion whatever of contributory negligence. In the course of the opinion the court said inter alia [239 Iowa 356, 30 N.W.2d 127]: "While it is true that the act of Wyant in driving his car into the standing car, was an intervening cause, yet this does not as a matter of law make it the sole proximate cause such as to relieve appellee. If negligence existed, it was a continuing negligence so long as the crossing was blocked without adequate signals. Assuming Wyant to have been negligent still but for the continuing negligence of appellee presumably no accident would have occurred. A subsequent and independent intervening cause will not absolve a defendant of negligence if it might reasonably have been foreseen. Webber v. E. K. Larimer Hardware Co., 234 Iowa 1381, 15 N.W.2d 286; Restatement of the Law, Torts, Sec. 441; Wright v. Chicago, R. I. & P. Ry. Co., 222 Iowa 583, 268 N.W. 915; Blessing v. Welding, 226 Iowa 1178, 286 N.W. 436. If the original wrong concurs with the intervening cause and both act proximately in producing the injury, both as a rule are proximate causes. Judd v. Rudolph, 207 Iowa 113, 222 N.W. 416, 62 A.L.R. 1174."

We think this decision has no bearing on the issue of contributory negligence. This

view is strengthened by decisions of the Supreme Court of Iowa rendered subsequent to the Lindquist case. Thus, in Kinney v. Larsen, supra, the court held a plaintiff injured at a railway crossing guilty of contributory negligence as a matter of law. In the course of the opinion it is said [239 Iowa 494, 31 N.W.2d 637]: "The conclusion is unavoidable that when plaintiff says he looked south the second time, the train was in plain sight. Plaintiff was under the duty to exercise reasonable care to look for approaching trains and to see what was clearly visible. If, as he says, plaintiff did not see the train, it must be for the reason he did not look as he claims he did. His failure, whether to look or to see what was in plain sight, must be deemed contributory negligence. Among the decisions which support our conclusion are Russell v. Scandrett, 225 Iowa 1129, 281 N.W. 782; Meier v. Chicago, R. I. & P. R. Co., 224 Iowa 295, 275 N.W. 139; Cashman v. Chicago, B. & Q. R. Co., 217 Iowa 469, 250 N.W. 111; Sodemann v. Chicago, M. St. P. & P. R. Co., 215 Iowa 827, 244 N.W. 865; Yanaway v. Chicago, R. I. & P. R. Co., supra, 195 Iowa 86, 190 N.W. 21; Landis v. Interurban R. Co., 166 Iowa 20, 147 N.W. 318."

In the instant case the conclusion is inescapable that the plaintiff either did not look or his lights were insufficient, or his speed was too great. The undisputed evidence conclusively shows contributory negligence and the judgment appealed from is therefore affirmed.